**2021 IL 126432**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126432)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ROBERT CHRISTOPHER JONES, Appellant.

*Opinion filed December 16, 2021.*

JUSTICE CARTER delivered the judgment of the court, with opinion.

Justices Garman, Theis, Michael J. Burke, and Overstreet concurred in the judgment and opinion.

Justice Neville dissented, with opinion, joined by Chief Justice Anne M. Burke.

## OPINION

¶ 1 Petitioner Robert Christopher Jones was a juvenile in 2000, when he pled guilty to one count of first degree murder and was sentenced to 50 years in prison pursuant to a fully negotiated plea agreement. After unsuccessfully petitioning for postconviction relief, petitioner sought leave to file a successive postconviction

petition alleging his 50-year juvenile sentence violated the eighth amendment protections in *Miller v. Alabama*, 567 U.S. 460 (2012). The trial court denied his motion for leave, and the appellate court affirmed, finding that petitioner's claims did not invoke the protections provided to juveniles in *Miller*. 2020 IL App (3d) 140573-UB. After reviewing the parties' arguments and the United States Supreme Court's most recent decision in *Jones v. Mississippi*, 593 U.S. ___, ___,141 S. Ct. 1307, 1312 (2021), we affirm the appellant court's judgment.

¶ 2                                I. BACKGROUND

¶ 3        In 1999, when petitioner was 16 years old, he was charged in La Salle County circuit court with eight counts of first degree murder; two counts of armed robbery, a Class X felony; one count of residential burglary, a Class 1 felony; and one count of home invasion, a Class X felony. Petitioner confessed to entering the home of George and Rebecca Thorpe at 2 a.m. armed with a knife. He knew they were home at that time, and he intended to take their money. The Thorpes were an elderly couple whom petitioner considered to be his great-aunt and great-uncle. Petitioner stated he did not know how many times he stabbed George before he moved to Rebecca's room and began to stab her as she reached for the telephone. He also did not know how many times he stabbed Rebecca before he covered her face with a pillow to stop her from making "gurgling" sounds. After taking Rebecca's purse and lockbox, petitioner fled the scene.

¶ 4        After abandoning a potential insanity defense, petitioner agreed to enter a fully negotiated guilty plea. According to the plea deal, he would plead guilty to one count each of first degree murder and residential burglary and two counts of armed robbery in exchange for the State dismissing the remaining charges. Under the terms of the agreement, petitioner would be sentenced to concurrent prison terms of 50 years for the murder, 30 years for each armed robbery count, and 15 years for the residential burglary, with credit being given for the time he already spent in custody. He was 17 years old when he agreed to enter into the plea agreement.

¶ 5        After reviewing the factual predicate for the charges and the terms of the plea agreement and giving the appropriate admonishments, the trial judge found the plea was knowingly and voluntarily made. Petitioner waived the preparation of a presentence investigation report as well as any hearing on mitigating and

aggravating factors. In May 2000, the trial court entered judgment in accordance with the terms of the parties' fully negotiated plea agreement.

¶ 6        Petitioner did not timely seek to withdraw his guilty plea or appeal from that judgment. He did, however, later file a *pro se* postconviction petition seeking relief. In that petition, petitioner argued that his defense counsel was ineffective and that his sentence constituted an unconstitutional violation of his due process rights. The trial court denied the petition after an evidentiary hearing, and that dismissal was upheld on appeal. *People v. Jones*, 345 Ill. App. 3d 1159 (2004) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 7        Petitioner later filed a *pro se* successive postconviction petition, arguing that both the provision automatically transferring certain juvenile cases to adult criminal court and the requirement in the Illinois truth-in-sentencing statute that he serve every day of his sentence were unconstitutional under the principles the United States Supreme Court found applicable to juvenile offenders in *Miller*, 467 U.S. 460, *Graham v. Florida*, 560 U.S. 48 (2010), and *Roper v. Simmons*, 543 U.S. 551 (2005). In petitioner's motion for leave to file his successive postconviction petition, filed two weeks after that petition, he noted that his guilty plea and the subsequent judgment were entered in 2000, years before *Miller* was decided. He also asserted that the mandatory statutory scheme that applied to him at that time was void when applied to juvenile offenders. The trial court denied petitioner's motion for leave to file his successive postconviction petition.

¶ 8        On appeal, petitioner argued the claims in his *pro se* successive petition met the cause-and-prejudice standard, requiring his case to be remanded to the trial court for appointment of counsel and additional postconviction proceedings. The appellate court disagreed and affirmed the denial of leave to file the successive postconviction petition. It agreed with the trial court that petitioner did not satisfy the cause-and-prejudice test and held that his sentence was not mandatory because he voluntarily entered into a fully negotiated plea arrangement. The appellate court also explained that petitioner was unable to receive relief under *Miller* because he did not receive a life sentence when he could be released from prison at the age of 66. 2016 IL App (3d) 140537-U.

¶ 9        In his initial petition for leave to appeal to this court, petitioner argued his plea was void because it was premised on a now-unconstitutional mandatory life

sentence. We entered a supervisory order directing the appellate court to vacate its judgment and reconsider those contentions in light of *People v. Buffer*, 2019 IL 122327, where we held that a sentence of more than 40 years constitutes *de facto* life for a juvenile offender. After reexamining those issues, the appellate court vacated its prior decision and again affirmed the trial court's dismissal of petitioner's motion for leave to file a successive postconviction petition, with Justice Wright specially concurring. 2020 IL App (3d) 140573-UB.

¶ 10    The appellate court reasoned that petitioner's fully negotiated guilty plea stipulated to a 50-year sentence that was only later declared to constitute *de facto* life, effectively waiving any eighth amendment (U.S. Const., amend. VIII) sentencing challenge based on the principles in *Miller*. In addition, he could not challenge the sentencing scheme at the time as it applied to him because his fully negotiated plea agreement precluded it from ever actually being applied to him. Because petitioner was therefore unable to establish the "prejudice" prong of the cause-and-prejudice test, the appellate court's judgment affirmed the trial court's denial of his motion for leave to file his successive postconviction petition. 2020 IL App (3d) 140573-UB, ¶¶ 14, 19. The court later denied petitioner's motion for rehearing.

¶ 11    Petitioner then filed a petition for leave to appeal from the appellate court's revised judgment pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2019), and this court allowed that petition.

¶ 12                                   II. ANALYSIS

¶ 13    Before this court, petitioner raises two issues: (1) whether the appellate court erred by finding that his 1999 guilty plea, entered into while he was a juvenile, bars him from filing a successive postconviction petition alleging that his 50-year *de facto* life sentence violated the eighth amendment of the federal constitution (U.S. Const., amend. VIII) under the rationale in *Miller* and its progeny and (2) the appropriate remedy under the facts of this case if petitioner raised a valid *Miller* claim.

¶ 14    We begin our examination by addressing a question of first impression in Illinois: whether petitioner's guilty plea, entered into when he was a juvenile,

precludes him from raising a *Miller* claim. Because that issue presents a pure question of law, it is subject to *de novo* review. *People v. Bailey*, 2017 IL 121450, ¶ 25.

¶ 15 Petitioner argues that the sentencing scheme in place at the time of his guilty plea violated the eighth amendment protections noted in *Miller*. He asserts that, if he had gone to trial and been convicted of committing two first degree murders as a juvenile offender, he would have faced a mandatory life sentence under the then-existing statutory sentencing scheme. To comport with *Miller*, however, the trial court was required to use its discretion when deciding whether to impose a life sentence on a juvenile offender. Because the mandatory life sentence required by the statutory scheme precluded the trial court from exercising its discretion in imposing the proper sentence, petitioner asserts that the scheme was unconstitutional as applied to him as a juvenile offender.

¶ 16 The United States Supreme Court has unequivocally stated that the federal constitution's eighth amendment protections against cruel and unusual punishment for juvenile offenders are premised on the fundamental concept of proportionality. The Court has viewed the application of that concept "less through a historical prism than according to ' "the evolving standards of decency that mark the progress of a maturing society." ' " *Miller*, 567 U.S. at 469 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976), quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion)). The additional protections that the Court has recognized for youthful offenders, however, are not without bounds.

¶ 17 As the Court recently reaffirmed in *Jones*, 593 U.S. at ___, 141 S. Ct. at 1312, although juvenile offenders may not receive mandatory sentences of life-without-parole, they may still be given discretionary life sentences if the appropriate safeguards are in place. See also *Miller*, 567 U.S. at 489 (stating that "*Graham*, *Roper*, and our individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles"). In petitioner's view, therefore, a constitutionally valid sentencing scheme must provide trial courts with discretion in setting those types of juvenile sentences. He asserts that here the sentencing scheme that would have applied if he had been convicted of the two first degree murder charges would have mandated a life sentence, eliminating the trial court's

use of any discretion, and for that reason it was an unconstitutional violation of juveniles' eighth amendment protections under *Miller*.

¶ 18    If the statutory sentencing scheme had actually been applied in this case to set petitioner's life sentence, petitioner's argument would have presented a claim that we could have reviewed on its legal merits. The problem with petitioner's claim is apparent from his arguments on this issue: the mandatory scheme that applied in Illinois at the time he was sentenced was never applied to him. Instead, his 50-year sentence for a single count of first degree murder was imposed as part of the fully negotiated guilty plea agreement he entered into with the State.

¶ 19    Petitioner acknowledges, as he must, that he was never sentenced under the statutory scheme he now claims is constitutionally invalid as it applied to him. He maintains, however, that when he entered into the plea agreement with the State, he did not anticipate that the 50-year prison term stipulated in it would later be declared to be a *de facto* life sentence that required the trial court's use of discretion and consideration of his youthful characteristics and rehabilitative potential. In making that argument, petitioner effectively asserts that he did not knowingly and voluntarily enter into the plea agreement. It is undisputed, however, that petitioner, the State, and the trial court all correctly understood the law that was applicable at the time petitioner entered into the plea agreement. The crux of petitioner's claim is that none of them knew that the Supreme Court would later change the criteria for reviewing the constitutionality of the applicable law.

¶ 20    By entering a plea agreement, a defendant "forecloses any claim of error. 'It is well established that a voluntary guilty plea waives all non-jurisdictional errors or irregularities, *including constitutional ones*.' " (Emphasis added.) *People v. Sophanavong*, 2020 IL 124337, ¶ 33 (quoting *People v. Townsell*, 209 Ill. 2d 543, 545 (2004)). Here, petitioner did not raise any claim that the trial court lacked jurisdiction.

¶ 21    Fundamentally, plea agreements are contracts, and principles of waiver apply equally to them. *People v. Absher*, 242 Ill. 2d 77, 87 (2011). Entering into a contract is generally "a bet on the future." *Dingle v. Stevenson*, 840 F.3d 171, 175 (4th Cir. 2016). "[A] classic guilty plea permits a defendant to gain a present benefit in return for the risk that he may have to [forgo] future favorable legal developments." *Id.*

¶ 22 In *Dingle*, the defendant was 17 years old when he was charged with numerous serious offenses, including murder. After the State filed a notice of its intent to seek the death penalty under South Carolina law, Dingle sought to avoid death by entering a guilty plea on all counts in exchange for a sentence of life in prison with the possibility of parole after 30 years. Because the imposition of consecutive sentences proved to bar the possibility of parole, Dingle sought postconviction relief. While those proceedings were pending, the Supreme Court issued *Roper*, 543 U.S. 551, holding that the eighth amendment barred capital punishment for juvenile offenders, eliminating any risk that he could have been sentenced to death if convicted of the charged offenses. Dingle then tried to withdraw his guilty plea, asserting that his original guilty plea was based on his desire to avoid the death penalty, for which he was no longer eligible after *Roper*. *Dingle*, 840 F.3d at 172-73.

¶ 23 In its analysis, the Fourth Circuit Court of Appeals compared the situation to that in *Brady v. United States*, 397 U.S. 742 (1970), where the defendant also pled guilty to avoid the death penalty. When changes in the law resulted in the defendant no longer being death-eligible, Brady attempted to withdraw his plea. In rejecting that request, the Supreme Court explained that

"[t]he rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, *absent misrepresentation or other impermissible conduct by state agents* [citation], *a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise*." (Emphasis added.) *Id.* at 757.

See *Dingle*, 840 F.3d at 175.

¶ 24 Here, petitioner has not claimed that the State engaged in any misrepresentation or committed any misconduct. He attempts to distinguish the rule in *Brady* by pointing out an alleged factual distinction, arguing that Brady was not destined to receive a death sentence and that his attempt to withdraw the plea came after the

Court struck down the state law that imposed the death penalty. In his brief, petitioner asserts that Brady's "attempt was unsuccessful precisely because he pled guilty to avoid a potential, not a certain, sentence."

¶ 25        What petitioner's argument fails to recognize is the similarity of the actual circumstances surrounding the pleas entered by both *Brady* and petitioner. Petitioner asserts that he agreed to the plea deal with the State to avoid the mandatory sentence of life in prison he would have received if convicted of the host of serious charges, including two first degree murder counts, filed against him. Due to the procedural posture of this case, the record is sparse regarding any possible defenses petitioner may have been able to employ at trial. Although petitioner suggests that he had no defense to the charges, no one, including petitioner, can be certain of the outcome of the case if he had chosen to proceed to trial instead of pleading guilty. The State is constitutionally required to prove its case against a defendant at trial beyond a reasonable doubt for good reason. It would be purely speculative for this court to conclude that petitioner was doomed to be convicted of the most serious charges against him at trial and sentenced to mandatory life without parole, and we decline to adopt that approach in this case.

¶ 26        Contrary to the assertion in petitioner's brief, his current effort to undo the effects of his guilty plea shares much common ground with that of the defendant in *Brady*. Most importantly for our present analysis, both defendants entered a plea "to avoid a potential, not a certain, sentence." Because the principles that were considered and applied in *Brady* and *Dingle* operate here with equal force, we conclude that petitioner's knowing and voluntary guilty plea waived any constitutional challenge based on subsequent changes in the applicable law. See *Sophanavong*, 2020 IL 124337, ¶ 33; *Townsell*, 209 Ill. 2d at 545.

¶ 27        Furthermore, petitioner's *Miller* claims require him to show that the *de facto* life sentence he received was not entered as a result of the trial court's use of its discretion since both this court and the Supreme Court permit the imposition of discretionary life sentences on juvenile offenders. *Jones*, 593 U.S. at ___, 141 S. Ct. at 1312; *Miller*, 567 U.S. at 489; *People v. Davis*, 2014 IL 115595, ¶ 43. As the State points out, the trial judge here was not required to accept the parties' fully negotiated plea agreement. If the judge had found the factual predicate for the plea insufficient, found the defendant's entry of his plea to be involuntary or

unintelligent, or determined that the stipulated 50-year sentence was excessive under the facts and circumstances of the case, he could have declined to accept the plea. Because the trial court had the option to accept or reject the plea agreement offered by the parties, its decision necessarily constituted an exercise of its discretion. The trial court's decision to accept the plea agreement and enter a judgment consistent with it, thereby convicting petitioner, in relevant part, of one count of first degree murder and imposing the parties' agreed-on 50-year prison sentence, was not compelled by the statutory sentencing scheme that applied at the time or by any other legal authority. We therefore reject petitioner's *Miller* challenge.

¶ 28     *Miller*'s additional protections for juvenile offenders apply only when a trial court lacks, or refuses to use, discretion in sentencing a juvenile offender to a life, or *de facto* life, sentence. The trial court in this case did not fail to exercise its discretion in deciding to accept the parties' plea agreement and entering petitioner's convictions and 50-year sentence accordingly. Because petitioner failed to make constitutional claims that were cognizable under *Miller*, it was not error to deny his motion for leave to file a successive postconviction petition.

¶ 29     Because we find Miller inapplicable, we need not address the petitioner's remaining arguments. We also need not consider the second issue before us, namely, the proper remedy for an unconstitutional imposition of a *de facto* life sentence in this case.

¶ 30                                III. CONCLUSION

¶ 31     For the reasons stated, we affirm the judgment of the appellate court upholding the trial court's denial of petitioner's motion for leave to file his *pro se* successive postconviction petition.

¶ 32     Affirmed.

¶ 33     JUSTICE NEVILLE, dissenting:

- 9 -

¶ 34    The issue presented is whether petitioner, who entered a guilty plea in exchange for a *de facto* life sentence, is precluded from challenging that sentence as unconstitutional in violation of the new substantive rule of law set forth in *Miller v. Alabama*, 567 U.S. 460 (2012). The majority holds that petitioner is not entitled to challenge the constitutionality of his sentence because he waived that right by entering a negotiated guilty plea. *Supra* ¶¶ 19-26. I disagree and would hold that the *Miller* protections must be guaranteed to juvenile offenders who plead guilty as well as to those who insist that the State prove the charges beyond a reasonable doubt. Accordingly, I respectfully dissent.

¶ 35                              I. BACKGROUND

¶ 36    Petitioner was charged with several offenses, including two counts of first degree murder, that were committed when he was 16 years old. Petitioner ultimately entered a negotiated plea of guilty to one count each of first degree murder and residential burglary and two counts of armed robbery. In exchange, the State agreed to specified terms of imprisonment and dismissed the remaining charges against him. The circuit court approved the terms of the plea agreement and sentenced petitioner to concurrent prison terms of 50 years for murder, 30 years for each armed robbery count, and 15 years for residential burglary. As part of the plea process, petitioner waived his right to the preparation of a presentence investigation report and to a hearing in mitigation and aggravation. Petitioner was 17 years old when he entered into the plea agreement.

¶ 37    After filing an unsuccessful petition for postconviction relief, petitioner later moved for leave to file a successive postconviction petition. His proffered successive petition asserted that the automatic-transfer provision for juvenile offenders, together with the truth-in-sentencing provision in force at the time, required him to serve his entire 50-year sentence. According to the petition, that sentencing scheme violated the eighth amendment to the United States Constitution and the proportionate penalties clause of the Illinois Constitution (U.S. Const., amend. VIII; Ill. Const. 1970, art. I, § 11).

¶ 38    The circuit court denied petitioner's motion for leave to file the successive petition, and the appellate court affirmed. Thereafter, this court entered a supervisory order directing the appellate court to reconsider its decision in light of

*People v. Buffer*, 2019 IL 122327, ¶¶ 40-41, which held that any sentence greater than 40 years' imprisonment constitutes a *de facto* life sentence.

¶ 39 On remand, the appellate court again affirmed. 2020 IL App (3d) 140573-UB. The appellate court acknowledged that petitioner had shown cause under the cause-and-prejudice test applicable to successive postconviction petitions but held that he failed to establish prejudice because he had forfeited any constitutional challenge to his sentence by entering a fully negotiated plea. *Id.* ¶ 14. The appellate court concluded that, by entering into a negotiated plea agreement, petitioner had waived his right to challenge the constitutionality of his sentence. *Id.* ¶¶ 14-20.

¶ 40 The majority also affirms, and its reasoning essentially mirrors that of the appellate court. According to the majority, petitioner cannot show prejudice because he waived any constitutional error in the imposition of his sentence when he entered a negotiated guilty plea that included a *de facto* life sentence, even though he was a juvenile and the circuit court did not consider the factors articulated in *Miller*. *Supra* ¶¶ 19-27. I cannot agree with the majority's decision because it disregards the fundamental principles governing the sentencing of juvenile offenders.

¶ 41 II. ANALYSIS

¶ 42 A. United States Supreme Court
Juvenile Sentencing Jurisprudence

¶ 43 In an unbroken line of cases commencing in 2005, the United States Supreme Court has recognized that juvenile offenders are constitutionally different from adult defendants with regard to sentencing. In *Roper v. Simmons*, 543 U.S. 551, 578-79 (2005), the Court concluded that the eighth amendment prohibits capital punishment for murderers who were under 18 at the time of their crimes. Five years later, in *Graham v. Florida*, 560 U.S. 48, 82 (2010), the Court held that the eighth amendment prohibits a mandatory sentence of life without parole for offenders who were under 18 and committed nonhomicide offenses. Then in *Miller*, 567 U.S. at 489, the Court held that the eighth amendment precluded a mandatory sentence of life without parole for a juvenile offender who has committed homicide. The Court recognized that such a sentence could be imposed only where the sentence is not

mandatory and the sentencer has discretion to consider the mitigating qualities of a youthful offender and to impose a lesser punishment. *Id.* at 476. In *Montgomery v. Louisiana*, 577 U.S. 190, 206, 212 (2016), the Court held that *Miller* applied retroactively to cases on collateral review. And most recently in *Jones v. Mississippi*, 593 U.S. ___, ___, 141 S. Ct. 1307, 1316 (2021), the Court reaffirmed that the *Miller* factors must be considered before a sentencer can impose a discretionary life term on a juvenile offender. The Court also recognized that the individual states may adopt additional reforms that limit the sentencing of juvenile offenders. *Id.* at ___, 141 S. Ct. at 1323.

¶ 44                               B. Illinois Supreme Court
                              Juvenile Sentencing Jurisprudence

¶ 45        This court has embraced all of those holdings and applied them to juvenile offenders in Illinois. Two years before *Montgomery* was issued, we held that the new rule announced in *Miller* is retroactive and must be applied to cases on collateral review. *People v. Davis*, 2014 IL 115595, ¶ 39. In *People v. Reyes*, 2016 IL 119271, ¶ 9. we held that *Miller* applies when a juvenile offender is sentenced to a mandatory term of years that is the functional equivalent of life without the possibility of parole and that the failure to consider the offender's youth, immaturity, and potential for rehabilitation as mitigating factors constitutes cruel and unusual punishment in violation of the eighth amendment.

¶ 46        In *People v. Holman*, 2017 IL 120655, ¶ 38, we recognized that the *Miller* Court's reasoning is not specific to mandatory life sentences alone. *Holman* observed that, under *Miller* and *Montgomery*, life sentences imposed on juvenile offenders—whether mandatory or discretionary—are disproportionate and violate the eighth amendment, unless the sentencer considers youth and its attendant characteristics. *Id.* ¶ 40. Accordingly, we held that *Miller* applies to discretionary sentences of life without parole for juvenile offenders. *Id.*

¶ 47        In *Buffer*, 2019 IL 122327, ¶¶ 40-41, this court held that a prison term imposed on a juvenile offender that exceeds 40 years constitutes a *de facto* life sentence in violation of the eighth amendment. We further observed that

"to prevail on a claim based on *Miller* and its progeny, a defendant sentenced for an offense committed while a juvenile must show that (1) the defendant was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and (2) the sentencing court failed to consider youth and its attendant characteristics in imposing the sentence." *Id.* ¶ 27.

Moreover, the legislature has codified the rule articulated in *Miller* by adopting a set of nine statutory factors that must be considered when a court imposes sentence on a juvenile offender. 730 ILCS 5/5-4.5-105 (West 2020).

¶ 48    The progression of this precedent has been clear and consistent. Both the United States Supreme Court and this court have specifically recognized that juvenile offenders are different from adults when it comes to sentencing and that they are entitled to additional protections that allow for the capacity to change, an increase in maturity, and the potential for rehabilitation.

¶ 49                    C. Application of Established Case Precedent

¶ 50    I believe this line of authority governs the outcome of this case. As the Supreme Court has specifically recognized, juveniles inherently lack maturity, do not have a fully formed character or a fully developed sense of responsibility, and are both more susceptible to external influences and less able to control their environment than are adults. *Miller*, 567 U.S. at 471, 475-76. In addition, juveniles are more capable of change than adults and, consequently, more capable of being reformed. *Id.* at 471. Based on these characteristics, juveniles are less deserving of the most severe punishments, and it will be the rare case in which a life sentence will be appropriate for a juvenile offender. *Id.* at 479-80.

¶ 51    Petitioner was a juvenile when the offenses were committed and when he entered his guilty plea, and he agreed to serve a 50-year *de facto* life term without the sentencing judge's consideration of the characteristics that were attendant to his youth.  Also, as is common in cases involving a plea agreement, petitioner waived his statutory right to a presentence investigation report and a hearing in mitigation and aggravation—which would have influenced the sentencing judge's assessment of the plea agreement. A presentence investigation report and hearing in mitigation would have provided relevant information as to petitioner's characteristics such as

his personal background and environment, his level of maturity and ability to consider risks and consequences of behavior, the presence of cognitive or developmental disability, his susceptibility to outside pressure, and his potential for rehabilitation. The waiver of those two procedural safeguards prevented the sentencing judge from fully considering the *Miller* factors.

¶ 52      In my view, the established precedent of the Supreme Court and this court as to the sentencing of juveniles should apply here. I would adopt the reasoning applied in a line of cases holding that a juvenile offender should receive the benefit of the *Miller* protections even though he or she has entered a guilty plea. See *People v. Johnson*, 2021 IL App (3d) 180357, ¶¶ 18-22 (holding that principles of waiver do not apply to bar a juvenile offender from challenging his negotiated sentence under *Miller*); *People v. Applewhite*, 2020 IL App (1st) 142330-B, ¶¶ 19-21 (same); *People v. Daniels*, 2020 IL App (1st) 171738, ¶¶ 18-19 (same as to a young-adult offender); *People v. Parker*, 2019 IL App (5th) 150192, ¶¶ 10-18 (reversing the denial of leave to file a successive postconviction based on *Buffer*).

¶ 53                        D. The Majority's Cases Are Distinguishable

¶ 54      The majority, however, reaches the opposite conclusion and places significant reliance on *Brady v. United States*, 397 U.S. 742 (1970). In *Brady*, the Supreme Court addressed whether an adult defendant could argue that his guilty plea was involuntary because he pled guilty to avoid a potential sentence of death, which was subsequently held to be inapplicable to the charged offense. *Id.* at 749-50. The Court held that the defendant was precluded from challenging the voluntariness of his plea on the ground that "he discover[ed] long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the *likely penalties* attached to alternative courses of action." (Emphasis added.) *Id.* at 757.

¶ 55      The decision in *Brady* is distinguishable from this case in two critical respects. First, it involved an adult defendant and has nothing whatsoever to do with the sentencing of juvenile offenders. Second, the defendant in *Brady* only faced the *possibility* of a death sentence if convicted. *Id.* at 743. Here, petitioner faced a *mandatory* life sentence if convicted of both murder charges. The only reason the mandatory life sentence provision was not applied to petitioner is because he agreed to plead guilty to a single count of murder in exchange for a 50-year term of

- 14 -

imprisonment. That sentence constitutes a *de facto* life term, requiring consideration of the *Miller* factors. *Buffer*, 2019 IL 122327, ¶¶ 40-41. Given that *Brady* was decided more than 40 years ago and applies only to adult defendants, it obviously does not consider the special concerns surrounding imposition of a life term on a juvenile offender and does not reflect the evolving jurisprudence governing how juvenile offenders are to be treated for sentencing purposes.

¶ 56     In addition, the majority relies on *Dingle v. Stevenson*, 840 F.3d 171, 172 (4th Cir. 2016), which involved a juvenile offender who pled guilty to avoid the possibility of a death sentence and was sentenced to a life term with the opportunity for parole. The offender sought to set aside his guilty plea on the ground that *Roper* prohibited the death penalty for juvenile offenders. *Id.* at 173. In rejecting that argument, the *Dingle* court relied on *Brady* to hold that the offender was precluded from seeking vacatur of his guilty plea because the subsequently proscribed sentence was not imposed on him. *Id.* at 174-76.

¶ 57     *Dingle* does not control this case any more than *Brady* does. Like the adult defendant in *Brady*, the juvenile offender in *Dingle* only faced the possibility of a death sentence upon conviction. Here, petitioner faced a mandatory life sentence if convicted of both murder charges. Also, the offender in *Dingle* was not subjected to the sentence that *Roper* invalidated. In this case, however, petitioner was sentenced to a discretionary life term, as defined by *Buffer*, without the protections guaranteed under *Miller*. The *Dingle* court simply tracked the reasoning adopted in *Brady* and goes no further in explaining why juvenile offenders who plead guilty should be deprived of the protections that have been universally adopted and embraced following *Miller*.

¶ 58     In addition, the majority's reliance on *Brady* and *Dingle* suffers from a basic error in logic. The majority has confused the uncertainty of conviction with the possibility of a harsh sentence that could be imposed if the offender goes to trial. The uncertainty of conviction is present in virtually every case. That is why prosecutors are willing to offer plea deals and why defendants are often motivated to accept such deals to avoid the possibility of a sentence that is harsher than the one offered. The fact that conviction was not certain in petitioner's case was also true in *Brady* and *Dingle*. The difference between these cases is the fact that the offenders in *Brady* and *Dingle* entered guilty pleas to avoid a possible death

- 15 -

sentence. Here, petitioner pled guilty to avoid a mandatory life term—an unassailable statutory certainty upon conviction of two murder charges. Contrary to the majority's assertion, this case is not akin to *Brady* and *Dingle*.

¶ 59　　The majority also relies on this court's decision in *People v. Sophanavong*, 2020 IL 124337, ¶ 33 (citing *People v. Townsell*, 209 Ill. 2d 543, 545 (2004)), for the proposition that a defendant who enters a voluntary guilty plea relinquishes the right to challenge nonjurisdictional errors or irregularities, including those based on constitutional principles. However, both *Sophanavong* and *Townsell* are like *Brady* in that they involved adult defendants and did not consider the special sentencing concerns affecting juveniles. In addition, both of those cases are distinctly different from this case in that they did not involve novel constitutional rights. *Id.* ¶ 25 (rejecting defendant's request for a new sentencing hearing based on failure to comply with statutory requirement for a presentence investigation report); *Townsell*, 209 Ill. 2d at 547 (rejecting a challenge based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which addressed well-established constitutional rights). Here, petitioner's claim is premised on the new substantive rule of constitutional law articulated in *Miller*, which must be applied retroactively on collateral review. Therefore, neither *Sophanavong* nor *Townsell* offers any guidance in resolving this appeal, and *Brady* does nothing to change that.


¶ 60　　　　　　　　　　E. The Majority's Reasoning Is Flawed

¶ 61　　　　　　　　　　1. Youth Diminishes the Ability to
Agree to a *De Facto* Life Sentence

¶ 62　　The incontrovertible flaw in the majority's reasoning is that it treats this case as if it were a *Brady* case. It is not. It is a *Miller* case. And the United States Supreme Court and this court have definitively and consistently held that juvenile offenders are constitutionally different from adult defendants when it comes to sentencing.

¶ 63　　Here, as a consequence of the automatic transfer statute and the truth-in-sentencing law, petitioner is required to serve the full 50-year term of imprisonment specified in the plea agreement. Thus, petitioner was subjected to a sentence that has been declared unconstitutional—a discretionary *de facto* life term without the possibility of parole and without consideration of the *Miller* factors.

¶ 64    The analysis of the majority severely undermines the protections articulated in *Miller* and *Holman*. The majority's reasoning ignores the fact that a juvenile offender—like petitioner here—is likely to agree to a plea offer that includes an unconstitutionally long prison term as a means of avoiding a mandatory life sentence. The very same factors that *Roper*, *Graham*, and *Miller* have held to diminish a juvenile offender's culpability similarly impair a juvenile offender's ability to fully appreciate and knowingly enter into a plea agreement that includes a *de facto* life sentence. When it comes to sentencing, the rules that apply to adult defendants do not govern juvenile offenders, and this court should not mechanically apply *Brady*, *Sophanavong*, and *Townsell* here.

¶ 65                    2. The Majority Incorrectly Assumes That *Miller*
                      Does Not Apply to Discretionary Sentences

¶ 66    The majority seeks to justify its decision on the ground that the circuit court could have declined to accept the 50-year term of imprisonment as part of the plea agreement. *Supra* ¶ 27. This reasoning is entirely unpersuasive. This court held in *Holman* that the protections recognized and mandated in *Miller* apply even where the life sentence imposed on a juvenile is discretionary. *Holman*, 2017 IL 120655, ¶ 40. Also, given the nature of plea agreements generally—and the facts of this case—the possibility that the circuit court might have rejected the terms of the plea agreement is highly unlikely. But even if that were not the case, nothing in the record before us demonstrates that the court considered the mitigating characteristics attendant to petitioner's youth in exercising its discretion to approve the *de facto* life sentence. Those characteristics are equally relevant for offenders who plead guilty and those who go to trial—they do not magically disappear simply because a juvenile offender has agreed to a plea deal. If a sentencing judge is not required to consider the *Miller* factors when deciding whether to approve a plea agreement that includes a *de facto* life sentence, then juvenile offenders who are tried as adults necessarily must insist on a trial in order to benefit from the protections that *Miller* guarantees.

¶ 67                    3. The Majority's Contract Law Analysis Is Inapplicable

¶ 68     As a final point, I find the majority's reference to contract law as justification for its decision to be misguided. *Supra* ¶ 21. In noting that plea agreements are contracts and subject to waiver principles, the majority ignores that waiver of a constitutional right requires more. This court has recognized that "[w]aiver of a constitutional right is valid only if it is clearly established that there was an intentional relinquishment or abandonment of a known right" and that "[s]uch waivers must not only be voluntary, but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." (Internal quotation marks omitted.) *People v. McClanahan*, 191 Ill. 2d 127, 137 (2000).

¶ 69     Obviously, petitioner could not have knowingly waived his right to have the *Miller* factors considered when the court was evaluating the propriety of his plea agreement and *de facto* life term. *Miller* was not decided until 12 years after his plea was accepted, and *Buffer* was decided 7 years after that. Because the constitutional protections recognized in *Miller* and *Buffer* did not exist at the time of his plea, petitioner agreed to and received a sentence that violates the eighth amendment. In any other context, a juvenile such as petitioner would not be bound by a contractual obligation. Yet the majority takes the extraordinary step of holding that this court must enforce the terms of a contract that is unconstitutional.

¶ 70                    4. The Majority Should Adhere to Supreme Court
                             and Illinois Precedent

¶ 71     This appeal offers the opportunity for this court to confirm that we meant what we said in *Holman* and *Reyes*—that the constitutional protections recognized in *Miller* apply to juvenile offenders who receive a life sentence, whether mandatory or discretionary, natural or *de facto*. In my view, there is no good reason to depart from our prior precedent. I believe that we should hold that all juvenile offenders, including those who enter negotiated guilty pleas, are entitled to the protections set forth in *Miller*.

¶ 72                            III. CONCLUSION

- 18 -

¶ 73       In sum, I disagree with the majority's holding that a juvenile offender is precluded from challenging the imposition of a *de facto* term of life in prison, without consideration of the characteristics attendant to petitioner's youth, because that sentence was the culmination of a negotiated plea agreement at a time when the length of that sentence was *not* unconstitutional. *Stare decisis* has been—and should remain—our guiding principle. Therefore, I cannot join in the majority opinion, which ignores United States and Illinois juvenile sentencing jurisprudence. I would reverse the judgment of the lower courts and remand the cause for further postconviction proceedings. Accordingly, I respectfully dissent.

¶ 74       CHIEF JUSTICE ANNE M. BURKE joins in this dissent.