NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210200-U

NO. 4-21-0200

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 12, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RODGER THORNTON, Defendant-Appellant. | ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Jersey County No. 88CF21 Honorable Joshua A. Meyer, Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Harris and Steigmann concurred in the judgment.

**ORDER**

¶ 1     *Held*:   (1) Because any future challenge to the length of the prison sentence was waived by the negotiated guilty plea, the second amended petition for postconviction relief fails to make a substantial showing of a constitutional violation in the length of the prison sentence.

(2) Postconviction counsel filed a certificate stating that he had made amendments to the *pro se* petition that were necessary for adequate presentation of defendant's claims, and the certificate is, in that respect, unrebutted by the record.

¶ 2     Defendant, Rodger Thornton, is serving a sentence of natural-life imprisonment for the first degree murder of William J. Lewis. See Ill. Rev. Stat. 1987, ch. 38, ¶ 9-1(a)(2). Defendant petitioned the circuit court of Jersey County for postconviction relief. After appointing postconviction counsel, the court granted a motion by the State to dismiss defendant's second amended petition, agreeing with the State that the second amended petition failed to make a substantial showing of a constitutional violation. Defendant appeals.

¶ 3        His first contention is that, contrary to the circuit court's finding, his second amended petition made a substantial showing of a constitutional violation. He contends that when the eighth amendment (U.S. Const., amend. VIII) and the proportionate penalties clause (Ill. Const. 1970, art. I, § 11) are applied to the facts of his case, his life-without-parole prison sentence violates those constitutional provisions. In our *de novo* review, we conclude that the waiver inherent in defendant's negotiated guilty plea bars this contention.

¶ 4        Second, alternatively, defendant complains that his appointed postconviction counsel failed to make amendments to the *pro se* petition that were "necessary for an adequate presentation of [defendant's] contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). But postconviction counsel filed a certificate stating that he had made the necessary amendments— and the petition was amended, twice. In our *de novo* review, we find the certificate by postconviction counsel to be unrebutted by the record.

¶ 5        Therefore, we affirm the judgment.

¶ 6                            I. BACKGROUND

¶ 7        On June 30, 1988, defendant entered a negotiated guilty plea to count VI of the information, a count alleging that on February 4, 1988, he murdered Lewis. See Ill. Rev. Stat. 1987 ch. 38, ¶ 9-1(a)(2). Lewis was an 88-year-old man whom defendant bludgeoned to death supposedly because Lewis had reneged on his agreement to pay defendant $20 for shoveling snow. The State purportedly had evidence, in the form of a statement by defendant's girlfriend (whose name appears to be unspecified in the record), that defendant had repeatedly expressed to her an intention to kill Lewis to avenge Lewis's having implicated him, as a juvenile, in a residential burglary.

¶ 8        In any event, defendant deemed it advisable to make a deal with the State. By the terms of the plea agreement, the remaining five counts of the information were to be dismissed, and he would receive a sentence of natural life imprisonment.

¶ 9        On June 30, 1988, in the guilty plea hearing, the circuit court admonished defendant that the possible penalties for the charged offenses were death; natural-life imprisonment; imprisonment for not less than 20 years; or, if the term of imprisonment were an extended term, imprisonment for not less than 60 years. Part of the dialogue between the court and defendant was as follows:

> "THE COURT: Now, under the law, the penalties for murder as charged in these Informations are these: If you pled guilty or were found guilty of the charge of murder as set out in the six counts of the Information, one of the penalties could be the death penalty.
>
> Do you understand that, Mr. Thornton?
>
> THE DEFENDANT: Yes, I'm perfectly well aware of that.
>
> THE COURT: And another possible penalty is to be in prison for your natural life.
>
> Do you understand that?
>
> THE DEFENDANT: Yes, I understand."

¶ 10        The circuit court informed defendant of the rights he would "waive" (or "give up," as the court explained what "waive" meant) by pleading guilty, including the rights to a presentence investigation and to the preparation of a report on the presentence investigation:

> "THE COURT: When you have a trial, if you were found guilty at the trial, under the law, before you were sentenced, there would be a presentence

investigation made as to your situation, and this is usually made by the Probation Department or the Sheriff's Department, and a presentence investigation means that someone under the direction of the Court goes into your home community and talks with people who know you, talks with your family, talks with people who have employed you in the past, talks with teachers that you might have had in school. In other words, the person or persons who write the presentence investigation report goes out and finds out about your life and sets it out in a report which the Court then must consider before sentencing you. So, the Court would know about your medical history and your past family life and about your work life and about past criminal record, if any.

There would be a recommendation to the Court by the probation officer. In other words, this presentence investigation report is ma[d]e to the Court so the Court knows more about you than the Court knows about you now.

Now, by pleading guilty, there will be no presentence investigation report because there will be no presentence investigation. Do you understand that, Mr. Thornton?

THE DEFENDANT: Yes, I understand it."

¶ 11 The circuit court made sure that defendant understood the terms of the plea agreement. Instead of having one of the attorneys recite the terms of the plea agreement, the court requested defendant do so. The court wanted to ascertain his personal understanding of what the terms of the proposed plea agreement were:

"THE COURT: Now, I need for you to tell me what you understand is the plea agreement. What's going to happen to you by pleading guilty? What is the plea agreement as you understand it?

THE DEFENDANT: The way I understand it is, the way I gather it is I'm charged with six counts of murder. Five counts would be dropped.

THE COURT: The first five.

THE DEFENDANT: The first five would be dropped, dismissed, if I was to cop out to the last charge, to the last charge, and I would receive a term of life in prison.

THE COURT: All right. And when you say 'life in prison,' after talking with [defense counsel], you understand that's the same as natural life?

THE DEFENDANT: Yes, sir. I'm well aware of that."

¶ 12    At the conclusion of its admonitions to defendant, the circuit court found his proposed guilty plea to count VI to be knowing and voluntary. The court accepted the guilty plea, entered judgment on it, dismissed the remaining five counts of the information, and sentenced defendant to the agreed-upon term of natural life imprisonment.

¶ 13    In 2017, defendant filed, *pro se*, a petition for postconviction relief. In his petition, he claimed that recent neuroscience research and evolving societal standards regarding the treatment of youthful offenders made his natural life prison term, for a murder he committed at age 19, excessively severe under both the eighth amendment to the United States Constitution (U.S. Const., amend VIII) and the proportionate-penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). His petition cited such decisions as *Roper v. Simmons*, 543 U.S. 551 (2005), *Miller v. Alabama*, 567 U.S. 460 (2012), *People v. House*, 2015 IL App (1st) 110580,

- 5 -

*vacated*, No. 122134 (Ill. Nov. 28, 2018) (supervisory order), and *People v. Harris*, 2016 IL App (1st) 141744, *rev'd*, 2018 IL 121932. The circuit court summarily dismissed the *pro se* petition as frivolous or patently without merit. See 725 ILCS 5/122-2.1(a) (West 2016).

¶ 14　　　　In September 2019, we reversed the summary dismissal and remanded the case for further proceedings. See *People v. Thornton*, 2019 IL App (4th) 170560-U.

¶ 15　　　　On remand, the circuit court appointed postconviction counsel, who, on January 11, 2021, filed an amended petition for postconviction relief. The amended petition claimed as follows:

> "14. That the Defendant's Constitutional rights were violated under the U.S. Constitution as well as the Illinois Constitution, and further were violated pursuant to the [eighth amendment] and the [proportionate penalties clause] in that:

>> (a) The Defendant would not have accepted his negotiated plea if he had fully understood the implications of the eighth amendment as it relates to his emerging adult cognitive abilities.

>> (b) The Defendant would not have accepted his negotiated plea had he or his counsel had the benefit of the *Miller* and *Harris* decisions, and their implications of the eighth amendment. [Citation.]

>> (c) The Defendant would not have accepted his negotiated plea had he known of the scientific studies regarding the developing brain as it relates to a young adult's capability.

>>> (i) That given the Defendant[']s trauma he experienced as a child (as further outlined in the attached exhibit B), as well as his

age, the Defendant's brain was not developed to a sufficient extent to understand the implications of his negotiated plea.

(d) That due to said trauma and young age, the Defendant did not possess the cognitive abilities to understand the implications of his negotiated plea or to knowingly and voluntarily waive his right to a sentencing hearing.

(e) That the sentence of natural life in prison, as applied to the Defendant who was nineteen (19) years old at the time, violated the proportionate penalties clause of the Illinois Constitution, and violates his constitutional rights.

(f) That the trial court failed to consider the mitigating qualities of youth, as described in *Miller* before accepting his negotiated sentence. [Citation.]"

¶ 16        On January 25, 2021, because the amended petition inadvertently omitted the exhibits to which it referred, postconviction counsel moved for permission to file a second amended petition—which was in all respects identical to the amended petition except that it included the exhibits.

¶ 17        Also, on January 25, 2021, the State moved to dismiss the amended petition. (The parties appear to agree that this motion should be construed as a motion to dismiss the second amended petition.) The State gave essentially three reasons for its motion. First, the eighth-amendment analysis in *Miller* was inapplicable to offenders 18 years of age or older. Second, unlike the defendant in *House*, defendant in the present case was convicted as the sole perpetrator of Lewis's murder, not on a theory of accountability. Third, the amended petition

"fail[ed] to provide any reason an as-applied challenge should apply to defendant besides a flat assertion that he would not have pled guilty 'had he known of the scientific studies regarding the developing brain as it relates to a young adult's culpability.' "

¶ 18        On April 1, 2021, the circuit court granted the State's motion for dismissal. The reason, the dismissal order explained, was that the second amended petition "reference[d] general science" without "connect[ing] the general science mentioned to [defendant's] specific case." The order continued:

> "There are insufficient allegations of his own immaturity, cognitive developmental impairments, intellectual abilities, a specific diagnosis or symptom. *** He simply has not [pled] specific and individual allegations particular to him that rendered him functionally younger than [19]. *** The closest he gets to specific allegations in support of an as-applied claim are the general statements that his childhood 'trauma,' as well as his age, resulted in [his] brain not being developed enough to understand his negotiated plea or knowingly and voluntarily waive his right to a sentencing hearing or understand the implications of the plea. ***
>
>        [Defendant's] allegations, even if taken as true, do not rise to the level of a substantial violation of constitutional rights. [He] was 19 years old at the applicable time. He clearly does not have a direct or 'facial' constitutional claim, and *Miller* is not presumptively applicable to his claim. [His] claim under the eighth amendment fails to allege a substantial constitutional violation. The general allegation that he had 'trauma' from an abusive father, coupled with his age, fail to allege or show his individual characteristics caused his brain to be

- 8 -

more similar to that of a juvenile than an adult. [His] second amended petition fails to allege or show *Miller* should be applied to his specific case. His as-applied claim under the Illinois constitution is insufficient. The State's motion to dismiss is granted."

¶ 19    This appeal followed.

¶ 20    II. ANALYSIS

¶ 21    A. Whether the Second Amended Petition Made
a Substantial Showing of a Constitutional Violation

¶ 22    Defendant argues that his "postconviction petition made a substantial showing that his life-without-parole prison sentence[,] as applied to his case[,] violates the eighth amendment of the United States Constitution and proportionate penalties clause of the Illinois Constitution." In our *de novo* review (see *People v. Sanders*, 2016 IL 118123, ¶ 31), we affirm the dismissal of the second amended petition for postconviction relief because, in the second amended petition, defendant "[is] seeking to hold the State to its part of the [plea] bargain while unilaterally modifying the sentence[ ] to which [he] had earlier agreed" (*People v. Evans*, 174 Ill. 2d 320, 327 (1996)).

¶ 23    The second amended petition requested the circuit court to "vacate the Judgment in this matter and set this matter for a new sentencing hearing." Allowing defendant to unilaterally renege on the plea agreement would "fl[y] in the face of contract law principles" and would be "inconsistent with constitutional concerns of fundamental fairness." *Id.* The State delivered on its part of the bargain by giving up the remaining counts of the information and by forgoing the opportunity to seek capital punishment should defendant be found guilty in a trial. Likewise, defendant must deliver on his part of the bargain by serving his agreed-upon sentence of natural

life imprisonment. Granting the relief requested in his second amended petition would make this bargain—and all other negotiated plea agreements—meaningless and would "encourage gamesmanship of a most offensive nature." (Internal quotation marks omitted.) *Id.* By agreeing to a sentence of life imprisonment in return for the dismissal of the first five counts of the information and the elimination of the risk of the death penalty, defendant effectively agreed not to challenge that sentence as excessive. See *People v. Linder*, 186 Ill. 2d 67, 74 (1999) (holding that "[b]y agreeing to plead guilty in exchange for a recommended sentencing cap, a defendant is, in effect, agreeing not to challenge any sentence imposed below that cap on the grounds that it is excessive"). Defendant must be held to his side of the bargain.

¶ 24      B. The Alternative Claim That Postconviction Counsel

Failed to Make Necessary Amendments to the *Pro Se* Petition

¶ 25      Under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), the record must "contain a showing" that postconviction counsel discharged certain duties, including the making of "any amendments to the petitions filed *pro se* that are necessary for adequate presentation of [the] petitioner's contentions." This showing "may be made by the certificate of [postconviction counsel]." *Id.* Such a certificate raises "a presumption that postconviction counsel provided reasonable assistance during second-stage proceedings under the [Post-Conviction Hearing] Act [(725 ILCS 5/122-1 *et seq.* (West 2020))]." *People v. Addison*, 2021 IL App (2d) 180545, ¶ 26. To overcome this presumption raised by the Rule 651(c) certificate, defendant must show that "the record positively rebuts the presumption of reasonableness." *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 28. We decide *de novo* whether the record does so. See *id.* ¶ 25.

¶ 26      The Rule 651(c) duty of making any necessary amendments to the *pro se* petition means to "shape[ ] the petitioner's claims into proper legal form." *People v. Perkins*, 229 Ill. 2d

34, 43-44 (2007). Defendant complains that, instead of shaping his *pro se* claim into proper legal form, postconviction counsel substituted a different claim for his *pro se* claim. The *pro se* claim, as defendant describes it in his brief, was that, "as applied to him[,] [his] life sentence for an offense that he committed at just 19 years old violated the eighth amendment." Instead of presenting *that* claim "to the court in appropriate legal form" (*People v. Johnson*, 154 Ill. 2d 227, 245 (1993)) and instead of buttressing that claim with discussions of "the relevant science on juvenile brain development" and descriptions of the trauma and deprivations that defendant suffered in his childhood, postconviction counsel raised a challenge to the knowingness of the guilty plea. Postconviction counsel pleaded that defendant would not have entered into the negotiated plea agreement if he had known the new constitutional principles that *Miller* and *Harris* later expounded or if he had understood how childhood trauma and his incompletely developed young-adult brain prevented him from fully "understand[ing] the implications of his negotiated plea."

¶ 27    In his brief, however, when defendant refers to the sufferings of his childhood—specifically, his "injurious home life" that "caused him to struggle in school, consistently fight with other children, and attempt to provide for himself while 'living on the street' "—he cites, for evidence, the pages of his sworn *pro se* petition in which he describes those hardships. His *pro se* petition is exhibit B of the second amended petition. Also, in his brief, when defendant discusses his "continuous[ ]" efforts "to rehabilitate himself from the moment he arrived in prison," he again cites pages of his *pro se* petition—which, in its entirety (including the academic certificates of completion from the prison), is referenced in and attached to the second amended petition. Thus, the evidence that defendant originally presented *pro se* is the evidence that his postconviction counsel presented with the second amended petition. As the State points out, although postconviction counsel has an obligation to attempt to contact witnesses specifically named in the

*pro se* petition and "to present a *petitioner's claims* in appropriate legal form, he [or she] is under no obligation to actively search for sources outside the record that might support general claims raised in a post-conviction petition." (Emphasis in original.) *Johnson*, 154 Ill. 2d at 247.

¶ 28 We understand defendant's complaint that postconviction counsel presented a different claim instead of the claim that defendant had intended to present. It is clearly apparent from the record, defendant argues, that postconviction counsel failed to do what Rule 651(c) required: "adequate presentation of *petitioner's* contentions." (Emphasis added.) Ill. S. Ct. R. 651(c) (eff. July 1, 2017). But the matter is not so simple. Presenting a petitioner's claim in appropriate legal form might require significantly recasting the claim so as to head off a fatal finding of waiver. "Our supreme court has held that a failure of post-conviction counsel to 'make a routine amendment to [a] post-conviction petition which would overcome the procedural bar of waiver' constitutes unreasonable assistance in violation of Rule 651(c)." *People v. Kluppelberg*, 327 Ill. App. 3d 939, 947 (2002) (quoting *People v. Turner*, 187 Ill. 2d 406, 412-13 (1999)). If postconviction counsel in this case had merely realleged, in a dressed-up form, defendant's *pro se* claim that sentencing him to life imprisonment, without the possibility of parole, violated the eighth amendment and the proportionate penalties clause, the second amended petition would have been vulnerable to dismissal on the ground of waiver. We already have highlighted this problem in our discussion of *Evans*.

¶ 29 To reiterate, by agreeing to plead guilty in return for a specific sentence, a defendant effectively gives up any claim that the sentence is excessive. In *Linder*, 186 Ill. 2d at 74, the supreme court held that "[b]y agreeing to plead guilty in exchange for a recommended sentencing cap, a defendant is, in effect, agreeing not to challenge any sentence imposed below that cap on the grounds that it is excessive." The same logic would apply to a defendant who had agreed to

plead guilty in return for a specific sentence: the defendant agrees not to challenge that specific sentence as excessive. As the appellate court said in *People v. Braje*, 130 Ill. App. 3d 1054, 1066 (1985):

> "Where a defendant enters a negotiated plea of guilty, he voluntarily accepts the sentence, even if it is in excess of the statutory minimum and thereby recognizes and admits that such sentence is fair and justified in light of his history and character and the nature of the circumstances of the offense. [Citation.] Consequently, defendant cannot now complain that the sentence was excessive since he had agreed that it was an appropriate sentence under the circumstances."

¶ 30    In the light of some recent appellate court case law, postconviction counsel might have perceived a possible path around this obstacle of waiver, and he might have felt obliged, by the duty of reasonable assistance, to take that path. See *Turner*, 187 Ill. 2d at 412-13; *Kluppelberg*, 327 Ill. App. 3d at 947. The possible work-around was this. If the guilty plea could be invalidated on the ground that it was not a knowing guilty plea—more specifically, on the ground that defendant, when he pleaded guilty, was uninformed of the as-of-yet nonexistent decisions in *Miller* and *Harris*—then the sentence imposed pursuant to the guilty plea would be invalidated as well. See *Evans*, 174 Ill. 2d at 332 (holding that, "following the entry of judgment on a negotiated guilty plea, even if a defendant wants to challenge only his sentence, he must move to withdraw the guilty plea and vacate the judgment so that, in the event the motion is granted, the parties are returned to the *status quo*"). After all, in January 2021, when postconviction counsel filed the second amended petition, there was appellate court authority for the proposition that a defendant's inability to foresee the as-of-yet undecided case of *Harris*, 2018 IL 121932, prevented his negotiated guilty

plea from "waiv[ing] his right to bring the as-applied proportionate penalties claim he now [sought] to assert." *People v. Daniels*, 2020 IL App (1st) 171738, ¶ 19.

¶ 31   Later, on December 16, 2021, the Illinois Supreme Court issued *People v. Jones*, 2021 IL 126432, which revealed that this supposed path around waiver was really a dead end. In *Jones*, the defendant entered a fully negotiated guilty plea to a charge that he had murdered an elderly couple, George and Rebecca Thorpe. *Id.* ¶¶ 3-4. The defendant was 16 years old when he committed these murders. *Id.* ¶ 2. In accordance with the plea agreement, he was sentenced to imprisonment for 50 years. *Id.* ¶ 4-5. Later, he moved for permission to file a successive petition for postconviction relief. *Id.* ¶ 7. In the proposed successive petition, he claimed that the statutory provision "automatically transferring certain juvenile cases to adult criminal court and the requirement in the Illinois truth-in-sentencing statute that he serve every day of his sentence were unconstitutional" under *Miller*, *Roper*, and *Graham v. Florida*, 560 U.S. 48 (2010). *Jones*, 2021 IL 126432, ¶ 7. He noted that "his guilty plea and the subsequent judgment were entered in 2000, years before *Miller* was decided," and thus he pleaded guilty without knowing, or being able to know, the crucial and germane principles of constitutional law that *Miller* later unveiled. *Id.* Even so, the circuit court denied the defendant permission to file the successive petition, and the appellate court affirmed. *Id.* ¶ 1.

¶ 32   The supreme court in *Jones* affirmed the appellate court's judgment. *Id.* One of the reasons why the supreme court did so was that voluntarily entering a guilty plea waived all nonjurisdiction errors—including constitutional errors that could not have been apparent until later. *Id.* ¶ 20. A guilty plea was "a bet on the future," by which the defendant "gain[ed] a present benefit in return for the risk that he [might] have to [forgo] future favorable legal developments." (Internal quotation marks omitted.) *Id.* ¶ 21. To avoid the mandatory sentence of life imprisonment

that he would have received if he had been convicted of other charges, the defendant in *Jones* made a deal with the State and pleaded guilty in return for 50 years' imprisonment. See *id.* ¶ 25. He thereby waived any constitutional challenge to the agreed-upon sentence of 50 years' imprisonment. See *id.* ¶ 20. This waiver remained effective despite any later changes in the law regarding the sentencing of juveniles. "[A]bsent misrepresentation or other impermissible conduct by state agents [citation], a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." (Emphasis and internal quotation marks omitted.) *Id.* ¶ 23.

¶ 33　　　　Likewise, in the present case, seemingly for the benefit of avoiding the risk of capital punishment should he be found guilty in a trial, defendant pleaded guilty to count VI in return for natural life imprisonment and the dismissal of the remaining five counts of the information. Defendant received the benefit of his bargain, and the State should receive the benefit of its bargain. Contracts are a bet on the future. *Jones* teaches that, contrary to *Daniels*, the knowingness of defendant's guilty plea to the murder of Lewis did not depend on defendant's being able to foresee future developments in the law. See *id.* By his voluntary and knowing guilty plea, defendant once and for all waived all challenges to his sentence, including constitutional challenges based on case law published long after his criminal case was concluded.

¶ 34　　　　In his reply brief, defendant argues that the waiver analysis in *Jones* is incorrect and unsupported by the cases the supreme court cites in that decision. We have no authority, however, to overrule a decision by the supreme court. *People v. Ward*, 2021 IL App (2d) 190243, ¶ 42. Our duty, instead, is to follow *Jones* by affirming, on the ground of waiver, the dismissal of defendant's second amended petition for postconviction relief. See *Jones*, 2021 IL 126432, ¶ 20. Granted, the circuit court did not rely on a theory of waiver. It is well established, though, that, in

our *de novo* review of the dismissal of a postconviction petition, "[w]e may affirm the dismissal based on any reason supported by the record because we review the judgment, not the trial court's reasoning." *People v. Gonzalez*, 2016 IL App (1st) 141660, ¶ 25. Regardless of whether the circuit court or the State raised it, waiver is a reason supported by the record.

¶ 35 In sum, it was reasonable of postconviction counsel to amend the *pro se* petition in such a way as to try to get around the obstacle of waiver. We decide *de novo* that the presumption of reasonable assistance raised by the Rule 651(c) certificate is unrebutted by the record. See *Addison*, 2021 IL App (2d) 180545, ¶ 26; *Wallace*, 2016 IL App (1st) 142758, ¶ 28.

¶ 36 C. The State's Motion to Strike Evidence Presented in

Defendant's Brief That Was Never Presented in the Circuit Court

¶ 37 The State moves that we strike evidentiary material that defendant submits in his brief but that was not presented below. For the reasons explained in *People v. Aquisto*, 2022 IL App (4th) 200081, ¶ 92, we deny the State's motion. Instead of striking the evidentiary material, we merely will disregard it because it is outside the record. See *Hurlbert v. Brewer*, 386 Ill. App. 3d 1096, 1101 (2008) (remarking that "a reviewing court will not consider any facts *dehors* the record and any claims based on such facts" and that, instead of striking the offending brief, the reviewing court will simply "disregard any fact or claim not supported by the record").

¶ 38 III. CONCLUSION

¶ 39 For the foregoing reasons, we affirm the circuit court's judgment.

¶ 40 Affirmed.