2023 IL App (1st) 210385-U

FOURTH DIVISION
Order filed May 11, 2023

No. 1-21-0385

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of Cook |
| Plaintiff-Appellee, | ) | County. |
| | ) | |
| v. | ) | No. 98 CR 24383 |
| | ) | |
| SEDRICK WHITE, | ) | Honorable |
| | ) | Patrick Kevin Coughlin, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Rochford and Martin concurred in the judgment.

**ORDER**

¶ 1 *Held*:     We affirmed the denial of the defendant's petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2020)) where the circuit court's failure to recharacterize the petition as a postconviction petition pursuant to the Post-Conviction Hearing Act (725 ILCS 5/121-1 et seq. (West 2020)) is not reviewable and the trial court did not err when it denied the defendant's petition where his guilty plea waived all constitutional errors.

¶ 2     The defendant, Sedrick White, appeals from the judgment of the Circuit Court of Cook County denying his petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2020)). On appeal, the defendant contends the circuit court erred when it failed to recharacterize his petition as a postconviction petition pursuant to the PostConviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)). The defendant also contends that the circuit court erred when it denied his petition for postjudgment relief because his sentence violated the proportionate penalties clause (Ill. Const. 1970 art. 1, § 11) as applied to him because the sentencing court did not adequately consider his rehabilitative potential and any of the attributes of youth that extend to young adults. The State responds that the defendant waived his constitutional claim by pleading guilty. For the reasons that follow, we affirm.

¶ 3     In 1998, the 20-year-old defendant was charged in a four-count indictment with three counts of first degree murder and one count of home invasion. On February 9, 1999, the circuit court conducted a Supreme Court Rule 402 (eff. July 1, 2012) conference. The conference was not transcribed on the record. The defendant elected not to accept an offer made by the State following the conference and instead told his attorney that he wished to plead guilty and make a statement to the court.

¶ 4     On April 8, 1999, the defendant agreed to plead guilty to Count I (knowingly killed the victim) in exchange for the State dismissing the remaining counts. When asked whether he wanted to plead guilty, the defendant stated he would like to "[r]edeem myself and try to show you that I don't deserve 40 years." The circuit court admonished the defendant: that he did not have to plead guilty; that he had a right to a trial and that by pleading guilty he was giving up that right; that the charge was first degree murder and that the sentencing range was from 20 to 60 years of incarceration; that the defendant's prison sentence would be followed by three years of mandatory

supervised release (MSR); and that he was not eligible for probation. The defendant responded that he wished to waive trial and plead guilty. The circuit court admonished the defendant a second time and then asked him if he had signed the jury waiver which had been presented to the court. The defendant stated that he had and wished to give up his right to a jury trial. The defendant further indicated that he was giving up his right to confront and cross-examine the witnesses against him and the right to present evidence on his own behalf. The circuit court asked whether any threats or promises and been made to the defendant, and when he replied "no" the court asked the State to present a factual basis for the plea.

¶ 5    The State offered a factual basis. The State alleged that the evidence would show that the defendant was working "security" for a drug operation. He left his position, but asked Grant Kelly to watch for the police while he was away. When the defendant returned, he discovered that Kelly had also left his position. The defendant found Kelly, they fought briefly, and Kelly ran into an apartment building, and hid in the victim's apartment. As Kelly was attempting to escape out a window, the defendant entered the apartment and confronted the victim. When the victim refused to tell the defendant where Kelly was located, he shot the victim in the head. Kelly escaped out the window and the defendant fled the scene.

¶ 6    The circuit court found that there was a factual basis for the plea, and that the defendant understood the nature of the charge and possible penalties. The court concluded that the defendant was entering his plea knowingly and voluntarily and accepted his plea of guilty to Count I of the indictment.

¶ 7    The parties agreed to adopt a pre-trial investigation as the presentence investigation and the circuit court conducted a sentencing hearing. The parties stipulated to the admissibility of a statement made by the defendant while in custody and a report from the medical examiner, and the State

published those documents. The statement and medical examiner's report were consistent with the factual basis presented earlier. The defendant presented the testimony of his grandmother, Eva White, in mitigation. Eva testified that she raised the defendant and he had never been involved with gangs or drugs. She testified that he was a sensitive boy who obeyed the rules of her house.

¶ 8    The parties presented arguments and the circuit court asked the defendant if he wished to speak before sentencing. The defendant apologized to the victim's family and asked the court to impose a sentence that would allow him to "go back out and raise his son."

¶ 9    The circuit court imposed a sentence of forty years' incarceration. The circuit court admonished the defendant regarding his appeal rights. Approximately 10 days later, the circuit court, on its own motion, re-admonished the defendant as follows:

> "THE COURT: I asked that the case be brought into court and the defendant be brought into court because I believe since this was a blind plea that I -- he was improperly given the wrong admonitions with respect to after the plea.
>
> So [what] I am going to do is admonish him, which I believe to have been a proper admonishments. I gave the admonishments which are basically given after trial, this was a blind plea.
>
> I am going to give the appropriate admonishments at this time so there is no confusion as to what the admonishments are.
>
> You have 30 days in which to file a petition to withdraw the previous guilty plea and appeal it. In order to go forward with that right you must file within 30 days of today's date a written motion asking for the judgment and the plea to be vacated. And that motion must be in writing. And it must set forth the grounds or basis for the motion.

If you are challenging the sentence you must move to withdraw the plea of guilty, also or [*sic*] you must file a motion for reconsideration of that sentence within 30 days of today.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If that is not done you will also [lose] your right to appeal the finding and the sentence in this case. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you want me to reconsider the sentence you have to file a motion within 30 days of today's date, I am going to give you from today's date. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And also if you want to move to withdraw your plea of guilty you have 30 days in which to file a petition and withdraw your plea of guilty because it was a blind plea of guilty, do you understand that?

THE DEFENDANT: Yes.

THE COURT: Your motion must be in writing setting forth the grounds for your motion. You will be given a copy of the transcript of the proceedings without cost. And an attorney would be appointed to represent you in this matter.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand you have to file those within 30 days of today's date, is that clear?

THE DEFENDANT: Yes."

The defendant moved to reconsider the sentence and the circuit court denied the motion. The defendant did not appeal.

¶ 10    In 2019, the defendant filed, *pro se*, a petition entitled "Petition for Post-Judgment Relief." The first line of the petition indicated that it was brought pursuant to "735 ILCS 5/2-1401 (f)." The defendant cited section 2-1401 several more times in the two-page petition. The petition does not refer to or cite the Post-Conviction Hearing Act.

¶ 11    Filed the same day was a document entitled "Memorandum of Law in Support of the Petition for Relief from Judgment Pursuant to 735 ILCS 5/2-1401." The memorandum contained six "arguments." Relevant here is argument six in which the defendant contended that his sentence constituted a *de facto* life sentence and violated the eighth amendment of the United States Constitution (U.S. Const. amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970 art. 1, § 11). The defendant argued that the circuit court should vacate his sentence and that "leave of the court should be granted if a petitioner demonstrates cause for his failure to bring his claim in a prior proceeding, and he was prejudiced by the claimed error." The defendant cited *People v. Pitsonbarger*, 205 Ill. 2d 444 (2002), a case concerning a petition for postconviction relief, but did not cite or otherwise reference the Post-Conviction Hearing Act. The defendant argued that his 40-year sentence violated the proportionate penalties clause because it failed to take into account his youth and was not guided by recent research in brain development and case law recognizing that young adults lack the ability to foresee the consequences of their action and have a greater potential for redemption.

¶ 12    The State did not file a response to the section 2-1401 petition.

¶ 13    On February 26, 2021, the circuit court, in a written order, denied the defendant's section 21401 petition, concluding, in relevant part, that the eighth amendment did not prohibit the defendant's sentence because he was over the age of 18 at the time of the offense and that the defendant's sentence was not a *de facto* life sentence because it was not in excess of 40 years. The defendant filed a timely notice of appeal.

¶ 14    On May 17, 2021, the defendant filed a motion for extension of time to file a motion to reconsider the denial of his petition instanter. The motion for reconsideration requested that the circuit court reconsider its decision and consider the petition in accordance with the Post-Conviction Hearing Act. The circuit court denied the motion as untimely, and this appeal follows.

¶ 15    This appeal presents three issues: (1) whether the circuit court erred when it failed to recharacterize the defendant's petition; (2) whether the section 2-1401 petition was timely filed; and (3) whether the defendant presented a meritorious claim or defense when he argued that his sentence was unconstitutional under the proportionate penalties clause.

¶ 16    First we address the defendant's contention that the circuit court erred when it failed to recharacterize his section 2-1401 petition as a petition under the Post-Conviction Hearing Act. The State responds that, because a court is under no obligation to recharacterize a pleading as a postconviction petition, it cannot be error to fail to do so. We agree with the State.

¶ 17    The Post-Conviction Hearing Act provides a method for reviewing constitutional errors alleged to have occurred during the proceedings leading to an incarcerated person's conviction and sentencing. See *People v. Johnson*, 2021 IL 125738, ¶ 22. Section 122-1(d) of the Act provides that:

"A person seeking relief by filing a petition under this Section must specify in the petition or its heading that it is filed under this Section. A trial court that has received a petition complaining of a conviction or sentence that fails to specify in the petition or its heading that

it is filed under this Section need not evaluate the petition to determine whether it could otherwise have stated some grounds for relief under this Article." 725 ILCS 5/1221(d) (West 2020).

¶ 18    In *People v. Shellstrom*, 216 Ill. 2d 45, 53 n.1 (2005), the supreme court observed: "We note that, while a trial court *may* treat a *pro se* pleading as a postconviction petition, there is no *requirement* that the court do so." (Emphasis in original.) Subsequently the court held that "[i]t cannot be error for a trial court to fail to do something it is not required to do." *People v. Stoffel*, 239 Ill. 2d 314, 324 (2010). The supreme court concluded that, in light of section 122-1(d), a circuit court's decision *not* to recharacterize a defendant's *pro se* pleading as a postconviction petition may not be reviewed for error. *Id.*

¶ 19    The defendant acknowledges the holding in *Stoffel* but argues that where a pleading makes explicit reference to the Act, a circuit court is obligated to consider a pleading under the Act. The defendant relies on *People v. McDonald¸* 373 Ill. App. 3d 876 (2007), and *People v. Weber*, 2021 IL App (2d) 190841, for support. We find these cases distinguishable from the case at bar.

¶ 20 In *McDonald*, the defendant appealed after the circuit court dismissed his postconviction petition for failing to cite the Act. *McDonald*, 373 Ill. App. 3d at 878. The *pro se* petition had the words "Ill. Post-Conviction Petition" at the top of the first three pages and the words "PostConviction Petition" at the top of the remaining pages. The circuit court, however, dismissed the petition for failing to comply with the requirements of section 122-1(d). The appellate court reversed, holding that "[a] *pro se* defendant's notation in the heading that a petition is an Illinois post-conviction petition adequately informs the circuit court that the petition is being filed pursuant to section 122-1 of the Act." *Id.* at 880.

¶ 21    More recently, in *Weber¸* the appellate court discussed *McDonald* and held that a *pro se* pleading which was entitled "Petition for Relief From Judgment Pursuant to 735 ILCS 5/2-1401(f)," but which included two footnotes requesting that the document be treated as filed under the PostConviction Hearing Act if the defendant was found ineligible for relief under section 2-1401, should be treated as a postconviction petition under the Act. See *Weber*, 2021 IL App (2d) 190841, ¶ 23.

¶ 22    In the case before us, the caption clearly indicated that the document was filed pursuant to section 2-1401. Nowhere in the text of the document, neither in the heading, body, nor even a footnote, does the defendant use the words "Post-Conviction Hearing Act" or include a citation to 725 ILCS 5/122-1 or any other section of the Act. Instead, the defendant would like us to conclude that because he briefly referenced the "cause and prejudice" test that he intended the pleading to be treated as a postconviction petition under the Act. Requiring circuit courts to scour *pro se* pleading for references to legal theories appropriate for a postconviction petition in an effort to recharacterize what is clearly labeled as a pleading under a different theory would run counter to the purposes of section 122-1(d). See *Stoffel*, 329 Ill. 2d at 326 (" '[I]f a petitioner files a section 2-1401 petition, *it is neither the concern nor the duty of the trial court* to search through it (typically, like the present case, consisting of multiple pages of legalistic rumblings) to determine whether the petitioner could possibly have stated a basis for proceeding under the Act.' " (Emphasis in original.) (quoting *People v. Sturgeon*, 272 Ill. App. 3d 48, 55 (1995) (J. Steigmann, specially concurring)). Accordingly, we reject the defendant's contention and conclude that the circuit court's decision *not* to recharacterize the pleading is beyond review.

¶ 23    Having concluded that the defendant's petition did not need to be reconsidered under the Post-Conviction Hearing Act, we now consider the merits of the petition under section 2-1401 of the

Code of Civil Procedure. Section 2-1401 establishes a comprehensive statutory procedure for the vacatur of a judgment older than 30 days. *People v. Vincent*, 226 Ill. 2d 1, 7 (2007). Section 21401 is a civil remedy but is applicable to both civil and criminal cases. *Id.* at 8. In criminal cases, a section 2-1401 petition for relief from judgment is the forum for correcting all errors of fact occurring in the prosecution of a cause, unknown to the defendant and the court at the time judgment was entered, which, if then known, would have prevented its rendition. *People v. Haynes*, 192 Ill. 2d 437, 461 (2000). A petitioner is entitled to relief from final judgment if he can set forth specific factual allegations supporting three elements: (1) the existence of a meritorious defense; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief. *Warren County Soil and Water Conservation District v. Walters*, 2015 IL 117783, ¶ 37. Generally, when the circuit court rules on the merits of a section 2-1401 petition, we review the circuit court's ruling for an abuse of discretion. *Id.* However, where the circuit court either enters judgment on the pleadings or dismisses a complaint *sua sponte*, the question is a matter of law which we review *de novo*. *Id.* ¶ 47.

¶ 24    The State argues that the defendant's petition was untimely. The defendant responds that the State has waived its timeliness argument. Generally, section 2-1401 petitions are subject to a two year statute of limitations. 735 ILCS 5/2-1401(c) (West 2020). However, timeliness is an affirmative defense that can be waived or forfeited. *People v. Cathey*, 2019 IL App (1st) 153118, ¶ 16. Application of the limitations period requires a court to make factual determinations because exceptions are allowed for delays attributable to disability, duress, or fraudulent concealment. *Id.* At ¶ 18. When the State forfeits the timeliness defense by not answering the petition, it deprives the defendant of an opportunity to amend the petition to properly allege facts demonstrating timeliness.

*Id.*. Accordingly, in the absence of an objection or response by the State raising the timeliness issue, it is improper to dismiss a section 2-1401 petition for untimeliness. *Id.* ¶ 19.

¶ 25    The State acknowledges that it did not file a response to the defendant's petition disputing its timeliness. The State also acknowledges that cases like *Cathey* have held that the failure to do so forfeits the challenge. Nevertheless, the State argues that waiver and forfeiture are limitations on the parties, not the jurisdiction of the reviewing court. See *People v. Medina*, 221 Ill. 2d at 394, 402 (2006). We conclude that just as it would be inappropriate for the circuit court to *sua sponte* dismiss a petition as untimely, it would be inappropriate for this court to allow the State to raise the argument for the first time on appeal. See *Cathey*, 2019 IL App (1st) 153118, ¶ 19. In neither situation would the defendant have an opportunity to amend his pleadings to address the timeliness issue. Accordingly, we will honor the State's forfeiture and will not consider the timeliness of the defendant's section 2-1401 petition.

¶ 26    Moving to the substance of the defendant's petition, the defendant argues that he has a meritorious claim because his 40-year sentence violates the proportionate penalties clause. The State argues that we need not reach this constitutional issue because the defendant's guilty plea waived any challenge, including constitutional challenges, to his conviction and sentence. We believe two recent cases, *People v. Jones*, 2021 IL 126432, and *People v. Aceituno*, 2022 IL App (1st) 172116, are key to our resolution of this issue. However, before reaching those cases, some background is necessary.

¶ 27    The sentencing of juvenile and youthful defenders has been evolving in this country. See *Aceituno¸* 2012 IL App (1st) 172116 ¶ 17. The United States Supreme Court has, over the last several years, restricted the sentences constitutionally available for youthful offenders accused of murder and other serious offenses. *Id.* In 2005, the Court began by holding that the death penalty cannot be

imposed upon juvenile offenders. *Roper v. Simmons*, 543 U.S. 551, 575 (2005). The Court reasoned that juveniles (1) lack maturity and a sense of responsibility, (2) are more susceptible to negative influence, and (3) do not have fully formed character. *Id.* at 569. In *Graham v. Florida*, 560 U.S. 48 (2009), the Court applied *Roper*'s reasoning to bar the imposition of natural life sentences on nonhomicide juvenile offenders. See *id.* at 75 ("A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."). The Court subsequently applied the reasoning of *Roper* and *Graham* to juvenile homicide defendants, holding that the eighth amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders. *Miller v. Alabama*, 567 U.S. 460 479-80 (2012) ("Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison."). In *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016), the Court gave *Miller* retroactive effect.

¶ 28    In light of the *Roper*-to-*Montgomery* line of cases the Illinois Supreme Court has developed its own evolving jurisprudence regarding lengthy sentences for juvenile defendants. See *Aceituno*, ¶ 18 (collecting cases following the development of *Miller*-related sentencing claims). In *People v. Reyes*, 2016 IL 119271, ¶¶ 9–10, the court held that a sentence that is the functional equivalent of life without parole is a *de facto* life sentence violates *Miller*. In *People v. Buffer*, 2019 IL 122327, ¶ 40, our supreme court determined that a sentence greater than 40 years constitutes a *de facto* life sentence for the purpose of a *Miller* challenge.

¶ 29    Like juveniles, young adult defendants have also sought protection from lengthy sentences. In *People v. Harris*, 2018 IL 121932, our supreme court considered whether the *Miller* line of cases

also applies to young adult defendants. The court concluded that for purposes of the eighth amendment the age of 18 marks the line between juveniles and adults. *Id.* ¶ 61. The court did not, however, completely foreclose an as-applied claim for young adult defendants under the proportionate penalties clause of the Illinois Constitution, holding instead that, in that case, the question was fact-specific and better suited to a challenge under the Post-Conviction Hearing Act. *Id.* ¶ 48.

¶ 30    Having examined the landscape of challenges to lengthy sentences for juvenile and young adult offenders, we return to the cases most closely related to the question before us.

¶ 31    In *Jones*, a 16-year-old defendant was charged with multiple felonies, including the murder of two individuals. To avoid the mandatory life sentence in effect at that time, the defendant pleaded guilty to a single count of murder, one count of residential burglary, and two counts of armed robbery. The defendant agreed to a 50-year term for the murder, with consecutive lesser terms on the other counts. The defendant did not seek to withdraw his guilty plea or appeal from that judgment. He later filed a postconviction petition that did not include a claim that his sentence violated the eighth amendment. That petition was denied after an evidentiary hearing. Ultimately, he filed a *pro se* successive postconviction petition arguing that his sentence was unconstitutional under *Miller*, *Graham*, and *Roper*. The circuit court denied the defendant leave to file his petition and he appealed. The appellate court affirmed, and the defendant filed a petition for leave to appeal in the supreme court. The supreme court entered a supervisory order directing the appellate court to vacate its judgment and reconsider its decision in light of *Buffer*. The appellate court again affirmed on remand, reasoning that the defendant's fully negotiated guilty plea effectively waived an eighth amendment challenge.

¶ 32    Relying on two federal court decisions, *Brady v. United States*, 397 U.S. 742 (1970), and *Dingle v. Stephenson*, 840 F.3d 171 (4th Cir. 2016), our supreme court affirmed the appellate court's decision on remand. In *Brady*, the defendant pled guilty to avoid a potential jury trial where the death sentence was possible. The Supreme Court held that his plea was voluntary and knowing even though subsequent developments in the law rendered him ineligible for death. *Brady*, 397 U.S. at 757 ("We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions."). In *Dingle*, the juvenile defendant pled guilty to avoid a possible death penalty and later petitioned for *habeas corpus* relief arguing that his guilty plea was not voluntary because he was coerced by the potential death sentence, which was later held unconstitutional for juveniles. The district court dismissed his petition and the circuit court affirmed, holding that:

> "Contracts in general are a bet on the future. Plea bargains are no different: a classic guilty plea permits a defendant to gain a present benefit in return for the risk that he may have to forego future favorable legal developments. Dingle received that present benefit— avoiding the death penalty and life without parole—under the law as it existed at the time. Although *Roper*, in hindsight, altered the calculus underlying Dingle's decision to accept a plea agreement, it does not undermine the voluntariness of his plea." *Dingle*, 840 F.3d at 175.

Our supreme court examined *Brady* and *Dingle* and rejected Jones' arguments. The supreme court reasoned:

> "Because the principles that were considered and applied in *Brady* and *Dingle* operate here with equal force, we conclude that petitioner's knowing and voluntary guilty plea waived any

constitutional challenge based on subsequent changes in the applicable law." *Jones*, 2021 IL 126432, ¶ 26.

¶ 33 More recently, in *Aceituno*, this court was called upon to apply *Jones* to a young adult case. In that case, the defendant was 18 years old at the time of the offense. Before trial, the trial court conducted a Rule 402 conference, and the defendant rejected a 45-year offer. The matter proceeded to trial, but after the State presented two witnesses the defendant changed his plea to guilty. Following a sentencing hearing, the trial court sentenced the defendant to a term of 48 years' incarceration. The defendant moved to reconsider his sentence, and the trial court denied the motion. The defendant appealed and his sentence was ultimately affirmed on appeal. See *People v. Aceituno*, No. 1-01-3872 (2002) (unpublished order under Illinois Supreme Court Rule 23).

¶ 34 The defendant filed a postconviction petition, which was dismissed as frivolous and patently without merit. The appellate court affirmed the dismissal. The defendant filed a successive postconviction petition arguing that his 48-year sentence constituted a *de facto* natural life sentence in violation of the eighth amendment and the proportionate penalties clause.

¶ 35 This court examined the *Miller* line of cases and the supreme court's decision in *Jones* and concluded that the defendant's guilty plea barred his constitutional claims, holding, "since the supreme court denied postconviction relief to a juvenile defendant, it is clear that the holding would apply with equal force to defendant here, who was 18 years old at the time of the offense." *Aceituno*, 2022 IL App (1st) 172116, ¶ 39. The *Aceituno* court rejected the defendant's argument that *Jones* did not apply because he had entered a blind plea. *Id.* ¶ 47. The court observed:

> "The issue is not whether defendant's plea required him to first seek to withdraw his guilty plea before challenging his sentence. But instead, the question raised in *Jones* is whether the defendant waived his constitutional claim by entering a plea of guilty." *Id.*

¶ 36    We find *Aceituno* and *Jones* controlling. Here, the defendant entered into a voluntary and knowing guilty plea, and he does not argue that the circuit court erred when it found that his plea was voluntary and knowing. As a consequence, this plea waived all constitutional errors, including the possibility of future changes in the law. See *Jones*, 2021 IL 126432, ¶ 26. Accordingly, the defendant has waived any potential claim that his sentence violates the proportionate penalties clause.

¶ 37    This conclusion notwithstanding, the defendant argues that the reasoning in *Aceituno* is flawed and contrary to the Illinois Supreme Court's holding in *People v. Lumzy*, 191 Ill. 2d 182 (2000). We find the defendant's reliance on *Lumzy* misplaced. In *Lumzy* the issue was whether the defendant was required to move to withdraw his guilty plea before he could appeal his sentence. See *Id.* at 184–85. The supreme court held that where the defendant agreed to plead guilty in exchange for the State dropping other charges but there was no agreement regarding the length of the defendant's sentence, the defendant was not obligated to move to withdraw his plea before appealing the sentence. *Id.* at 187. Although there is some factual similarity between the pleas entered by the defendant and the *Lumzy* defendant, there is no reason for this court to conclude that *Aceituno* is inapplicable. *Lumzy* did not discuss postjudgment proceedings, it was concerned only with the procedures required to directly appeal the sentence imposed following a guilty plea. Moreover, *Aceituno* clearly states the type of plea is irrelevant. See *Aceituno*, 2022 IL App (1st) 172116, ¶ 47 ("The issue is not whether defendant's plea required him to first seek to withdraw his guilty plea before challenging his sentence. But instead, the question raised in *Jones* is whether the defendant waived his constitutional claim by entering a plea of guilty."). Therefore, we find no need to discuss *Lumzy* further.

¶ 38 The defendant also contends that he established due diligence because the admonishments he received were improper. The defendant argues that because the admonishments did not substantially comply with Illinois Supreme Court Rule 605(b) (eff. Aug. 1, 1992) and were confusing, he has "reasonable cause" for the purposes of due diligence. We need not address this argument because we have found that the defendant failed to allege a meritorious claim or defense. See *R&J Constr. Supply Co., Inc. v. Adamusik*, 2017 IL App (1st) 160778, ¶ 11 ("If the petitioner fails to allege the existence of a meritorious defense, the petition is properly denied, and due diligence need not be addressed.")

¶ 39 Because the defendant's knowing and voluntary guilty plea waived all constitutional errors, he has no meritorious claim or defense. Therefore, the circuit court did not err when it dismissed his section 2-1401 postjudgment petition.

¶ 40 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 41 Affirmed.