**2025 IL 129767**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 129767)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
SEDRICK WHITE, Appellant.

*Opinion filed January 24, 2025.*

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Cunningham, and O'Brien concurred in the judgment and opinion.

Justice Rochford took no part in the decision.

## OPINION

¶ 1　　In 1999, petitioner, Sedrick White, entered a blind guilty plea to one count of first degree murder (720 ILCS 5/9-1(a)(1) (West 1998)). Following his plea, the Cook County circuit court sentenced him to 40 years in prison. More than 20 years later, petitioner filed a *pro se* petition for postjudgment relief pursuant to section 2-

1401(f) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401(f) (West 2020)). Petitioner alleged his 40-year sentence constituted a *de facto* life sentence in violation of the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). The State did not file a response to the section 2-1401 (735 ILCS 5/2-1401 (West 2020)) petition. In a written order, the circuit court subsequently denied the petition, concluding the eighth amendment did not prohibit petitioner's 40-year sentence because he was a 20-year-old adult at the time of the offense and the sentence did not violate the proportionate penalties clause, as it was not a *de facto* life sentence where his sentence was not more than 40 years

¶ 2      Petitioner appealed the circuit court's order denying his section 2-1401 petition, arguing the circuit court erred in denying his petition because he presented a meritorious claim that his 40-year sentence violates the proportionate penalties clause. 2023 IL App (1st) 210385-U, ¶ 26. The appellate court affirmed, holding petitioner's guilty plea waived any potential constitutional claim that his 40-year sentence violates the proportionate penalties clause. *Id.* ¶ 36. For the following reasons, we affirm the judgment of the appellate court, albeit on other grounds, and affirm the judgment of the circuit court.

¶ 3                           I. BACKGROUND

¶ 4                          A. Circuit Court Proceedings

¶ 5      In August 1998, when petitioner was 20 years old, he was charged with three counts of first degree murder (720 ILCS 5/9-1(a)(1)-(3) (West 1998)) and one count of home invasion (*id.* § 12-11(a)(1)) after he entered an apartment and fatally shot Arnel Adamore.[1]

---

[1]The record spells the victim's name as both Arnel and Arnell; for consistency we will spell his name as Arnel Adamore.

¶ 6                            1. *Guilty Plea & Sentencing*

¶ 7         In February 1999, the circuit court conducted a conference pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012).[2] Petitioner declined to accept the offer made at the conference and instead told his attorney that he wished to plead guilty and make a statement to the court.

¶ 8         In April 1999, petitioner entered a blind guilty plea to one count of first degree murder (720 ILCS 5/9-1(a)(1) (West 1998)). In exchange, the State dismissed the remaining counts. Prior to pleading guilty, the circuit court admonished petitioner that he did not have to plead guilty but had a right to a trial and that, by pleading guilty, he was giving up that right. The court then asked petitioner if he wanted to plead guilty, and petitioner stated he would like to "[r]edeem myself and try to show you that I don't deserve 40 years." In response, the court repeated the admonishments and informed petitioner that he would be pleading guilty to the charge of first degree murder and the sentencing range was between 20 to 60 years in prison, followed by 3 years of mandatory supervised release. The court informed him he was not eligible for probation. Petitioner responded that he understood and wished to waive trial and plead guilty. The court again repeated the admonishments, and petitioner agreed he was pleading guilty of his own free will and confirmed that he had not been threatened or promised anything in exchange for his blind plea.

¶ 9         The State offered a factual basis for the guilty plea, stating the evidence would show that, in August 1998, petitioner was working "security for a drug operation." At some point, he left his security post to go visit a friend in a nearby building and asked Grant Kelly to watch his post while he was gone. When petitioner returned, he discovered that Kelly had left the post. Petitioner found Kelly, they fought briefly, and then Kelly ran into an apartment building and hid from petitioner in the apartment of victim Arnel Adamore. As Kelly was attempting to escape out a window, petitioner entered the apartment and confronted Adamore, demanding to know where Kelly was. When Adamore refused to tell petitioner where Kelly was located, petitioner pushed Adamore to the ground and repeated his demand while holding a gun on Adamore. When Adamore did not comply, petitioner placed the

---

[2]The conference was not transcribed on the record, but at the April 1999 proceedings, prior to petitioner pleading guilty, the circuit court acknowledged the Rule 402 conference, and defense counsel described what occurred at the conference.

gun to Adamore's head and fired the weapon, killing him. Kelly escaped out the window, and petitioner fled the area. Defense counsel stipulated to the State's factual basis.

¶ 10   The circuit court found that there was a factual basis for the plea and that petitioner understood the nature of the charge and possible penalties. The court concluded that petitioner was entering his plea knowingly and voluntarily and accepted his plea of guilty to one count of first degree murder.

¶ 11   Following the guilty plea, the circuit court conducted petitioner's sentencing hearing. At sentencing, the parties agreed to adopt the pretrial investigation as the presentence investigation (PSI). The parties also stipulated to the admissibility of a statement made by petitioner while in police custody and the medical examiner's report, and the State subsequently published the documents. Both documents were consistent with the State's factual basis. Following the State's presentation of evidence, petitioner called his grandmother, Eva White, to testify in mitigation. Eva testified that she raised petitioner and he was never involved with gangs or drugs. Eva stated that petitioner was a sensitive child, obeyed her rules, and was supportive of his siblings. Eva asked the court for leniency and to take into consideration that petitioner had a three-year-old son.

¶ 12   Following the testimony, the parties presented arguments, and petitioner made a statement in allocution. In allocution, petitioner told the court he knew what he did was wrong but that he got caught up in the wrong place and what he did "was an accident." Petitioner apologized to the victim's family and asked the court to impose a sentence that would allow him to "go back out and raise his son."

¶ 13   In imposing sentence, the circuit court considered the facts of the case, the PSI, the statutory factors in mitigation and aggravation, the testimony of petitioner's grandmother, petitioner's statement in allocution, and the recommendations of the parties. The court also considered petitioner's background, including his family, educational, criminal, and employment history. The court acknowledged petitioner's statement in allocution but stated "this was no accident" and that petitioner "is a killer." The court went on to state:

> "It is probably a 60 year case. But I told counsel at the 402 conference, I heard nothing that would mitigate this. What I thought would be a

proper sentence after reviewing everything at the 402 conference including the photographs that were available, all the evidence that the State said they had.

After listening here, I found nothing that would mitigate this or, in fact, that he is the one that is inflicting misery upon his grandmother, upon his mother, upon his children, his sister and his children that he brought into this world. He is one of the father[s] around and the other child that he has apparently fathered as well. He won't be around for that. But he is the one that had caused all of this. He caused all of this."

Ultimately, the court concluded, "[w]hat is a fair sentence in this case is what I said before. And it is what I am giving him now." The court sentenced petitioner to 40 years in prison. The court then admonished him regarding his appeal rights.

¶ 14 Approximately 11 days later, the circuit court, on its own motion, readmonished petitioner. The court stated, "I asked that the case be brought into court and [petitioner] be brought into court because I believe since this was a blind plea that I—he was improperly given the wrong admonitions with respect to after the plea." Specifically, the court admonished petitioner that if he wished to challenge his sentence, he "must move to withdraw the plea of guilty, also or you must file a motion for reconsideration of that sentence within 30 days of today." The court informed petitioner that his motion must be in writing. Petitioner filed a timely written motion to reconsider his sentence where he claimed that his sentence was excessive in view of his background and the nature of his participation in the offense. Defense counsel waived petitioner's presence at the hearing on the motion to reconsider, and the circuit court denied the motion. Petitioner did not appeal.

¶ 15                                    2. *Petitioner's* Pro Se *Section 2-1401 Petition*

¶ 16 More than 20 years later, in 2019, petitioner filed a *pro se* petition for postjudgment relief pursuant to section 2-1401(f) of the Code (735 ILCS 5/2-1401(f) (West 2020)).[3] In an accompanying memorandum, petitioner raised a

_____

[3]In May 2019, petitioner initially filed his *pro se* petition for postjudgment relief pursuant to section 2-1401 of the Code with an accompanying memorandum, but no action

number of claims, only one of which is relevant in this case. Relevant here, petitioner alleged his 40-year sentence constituted a *de facto* life sentence in violation of the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Specifically, petitioner argued that changes in the law since his guilty plea, including caselaw recognizing that young adults should be afforded the same considerations as juvenile offenders at sentencing, established "cause" for his claim. Petitioner cited scientific studies and articles discussing the brain development of young adults and pointed to a consensus that his 20-year-old brain was closer to that of a juvenile than an adult. He argued his sentence was disproportionate because the circuit court failed to consider his youth and rehabilitative potential or the goal of restoring him to useful citizenship when imposing its sentence.

¶ 17 The State did not file a response to the section 2-1401 petition. In a written order, the circuit court denied the petition, concluding the eighth amendment did not prohibit petitioner's 40-year sentence because he was a 20-year-old adult at the time of the offense and his sentence did not violate the proportionate penalties clause, as it was not a *de facto* life sentence because it was not more than 40 years. The court also found petitioner failed to demonstrate diligence in presenting his claims to the court where the claims were known to petitioner for 20 years.

¶ 18                                B. Appellate Court Decision

¶ 19 Petitioner appealed, arguing (1) the circuit court erred when it failed to recharacterize his section 2-1401 petition as a petition under the Postconviction Hearing Act, (2) his section 2-1401 petition was timely filed, and (3) he presented a meritorious claim that his 40-year sentence violates the proportionate penalties clause. 2023 IL App (1st) 210385-U, ¶ 15.

¶ 20 The appellate court affirmed. *Id.* ¶ 40. Before reaching the merits of the appeal, the court addressed petitioner's contention that the circuit court erred when it failed to recharacterize his section 2-1401 petition as a petition under the Post-Conviction

was taken on the petition for reasons not clear from the record. Petitioner refiled his petition and accompanying memorandum in September 2020, and proceedings commenced.

Hearing Act (725 ILCS 5/121-1 *et seq.* (West 2020)). 2023 IL App (1st) 210385-U, ¶ 16. The court determined the caption clearly indicated that the document was filed pursuant to section 2-1401. *Id.* ¶ 22. Accordingly, the court rejected petitioner's contention and concluded that the circuit court's decision *not* to recharacterize the pleading was beyond review. *Id.*

¶ 21    The appellate court went on to address the merits of the petition. *Id.* ¶ 23. As to timeliness, the court recognized that section 2-1401 petitions are subject to a two-year statute of limitations (735 ILCS 5/2-1401(c) (West 2020)). Even so, the court found that, in the absence of an objection or response by the State raising the timeliness issue, it was improper to dismiss a section 2-1401 petition for untimeliness. 2023 IL App (1st) 210385-U, ¶ 24. The State acknowledged that it did not file a response to petitioner's section 2-1401 petition disputing its timeliness. *Id.* ¶ 25. The court concluded that, just as it would be inappropriate for the circuit court to *sua sponte* dismiss a petition as untimely, it would be inappropriate for the appellate court to allow the State to raise the argument for the first time on appeal where defendant never had an opportunity to amend his pleadings to address the issue. *Id.* (citing *People v. Cathey*, 2019 IL App (1st) 153118, ¶ 19). Thus, the court honored the State's forfeiture and did not consider the timeliness of petitioner's section 2-1401 petition. *Id.*

¶ 22    Moving to the substance of the petition, the appellate court found petitioner entered into a voluntary and knowing guilty plea and that the plea waived all constitutional errors, including the possibility of future changes in the law. *Id.* ¶ 36. Thus, the court relied on *People v. Jones*, 2021 IL 126432, and *People v. Aceituno*, 2022 IL App (1st) 172116, to hold that petitioner's guilty plea waived any potential constitutional claim that his 40-year sentence violates the proportionate penalties clause. 2023 IL App (1st) 210385-U, ¶ 36. To the extent petitioner argued that the reasoning in *Aceituno* is flawed and contrary to the holding in *People v. Lumzy*, 191 Ill. 2d 182 (2000), the appellate court found petitioner's reliance on *Lumzy* misplaced where *Lumzy* did not discuss postjudgment proceedings but was concerned with the procedures required to directly appeal the sentence imposed following a guilty plea. 2023 IL App (1st) 210385-U, ¶ 37. Further, the court stated that "*Aceituno* clearly states the type of plea is irrelevant." *Id.* (citing *Aceituno*, 2022 IL App (1st) 172116, ¶ 47 ("The issue is not whether defendant's plea required him to first seek to withdraw his guilty plea before challenging his

- 7 -

sentence. But instead, the question raised in *Jones* is whether the defendant waived his constitutional claim by entering a plea of guilty.")). The court went on to note that petitioner also contended that he established due diligence because the admonishments he received were improper, but the court stated, "[w]e need not address this argument because we have found that [petitioner] failed to allege a meritorious claim or defense." *Id.* ¶ 38. Ultimately, the court concluded that, because petitioner's knowing and voluntary guilty plea waived all constitutional errors, he had no meritorious claim or defense. *Id.* ¶ 39. Therefore, the court found the circuit court did not err when it dismissed petitioner's section 2-1401 postjudgment petition. *Id.*

¶ 23    This court granted petitioner's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021).

¶ 24                                    II. ANALYSIS

¶ 25    In this appeal, petitioner argues that the appellate court, in dismissing his section 2-1401 petition for postjudgment relief, relied on an overbroad reading of *Jones*, 2021 IL 126432, to hold that his blind guilty plea waived any potential constitutional claim that his 40-year sentence violates the proportionate penalties clause. Petitioner contends a defendant, like him, who enters an open or "blind" guilty plea, knowingly and voluntarily but with no agreement as to sentence, does not waive a constitutional challenge to his sentence.

¶ 26    The State concedes that the appellate court incorrectly held that petitioner's open guilty plea waived his proportionate penalties claim. The State agrees that where, as here, a defendant enters a plea with no agreement as to sentence, he does not waive any sentencing errors. See *People v. Johnson*, 2019 IL 122956, ¶¶ 30-32; Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024). We agree with the parties and accept the State's concession. Because the issue before the court presents a pure question of law, it is subject to *de novo* review. *Jones*, 2021 IL 126432, ¶ 14.

¶ 27    In *Jones*, 2021 IL 126432, ¶ 1, the juvenile defendant pleaded guilty to one count of first degree murder and was sentenced to 50 years in prison pursuant to a fully negotiated plea agreement. The defendant later sought leave to file a *pro se* successive postconviction petition arguing his sentence was unconstitutional under

- 8 -

*Miller v. Alabama*, 567 U.S. 460 (2012), *Graham v. Florida*, 560 U.S. 48 (2010), and *Roper v. Simmons*, 543 U.S. 551 (2005). *Jones*, 2021 IL 126432, ¶ 7. The circuit court denied the defendant leave to file his petition, and the appellate court affirmed, reasoning that the defendant's fully negotiated guilty plea stipulated to a 50-year sentence that was only later declared to constitute *de facto* life, effectively waiving any eighth amendment sentencing challenge based on the principles in *Miller*. *Id.* ¶¶ 7-10.

¶ 28    This court in *Jones* affirmed, finding the defendant's knowing and voluntary fully negotiated plea agreement waived any constitutional eighth amendment sentencing challenge. *Id.* ¶ 26. This court stated,

> "By entering a plea agreement, a defendant 'forecloses any claim of error. "It is well established that a voluntary guilty plea waives all non-jurisdictional errors or irregularities, *including constitutional ones*." ' (Emphasis added.) [Citation.] ***

> Fundamentally, plea agreements are contracts, and principles of waiver apply equally to them. [Citation.] Entering into a contract is generally 'a bet on the future.' [Citation.] '[A] classic guilty plea permits a defendant to gain a present benefit in return for the risk that he may have to [forgo] future favorable legal developments.' [Citation.]" *Id.* ¶¶ 20-21.

¶ 29    *Jones* makes clear that a defendant waives any sentencing error by entering into a fully negotiated plea involving an agreement as to sentence. *Id.* ¶¶ 20-26. The waiver stems from contract principles precluding a defendant from unilaterally altering a fully negotiated plea agreement, in which "the sentence is *inseparable* from the conviction." (Emphasis in original.) *People v. Wells*, 2023 IL 127169, ¶ 33. However, "where the record is clear that *absolutely no agreement existed* between the parties as to defendant's sentence, [a] defendant manifestly cannot be breaching such a nonexistent agreement by arguing that the sentence which the court imposed was excessive." (Emphasis in original.) *Lumzy*, 191 Ill. 2d at 187. As a consequence, the contract principles barring later challenges to a sentence's length do not apply. *Id.* Thus, when a defendant enters an open or "blind" guilty plea where there is no agreement as to sentence, the defendant is not precluded from challenging his sentence. See *Johnson*, 2019 IL 122956, ¶¶ 30-32. Accordingly, to the extent that *Aceituno*, 2022 IL App (1st) 172116, suggests that a defendant who

enters a knowing and voluntary guilty plea that contains no agreement as to sentence waives a constitutional challenge to his sentence, it is in error and overruled.

¶ 30       The fact that an open or "blind" guilty plea does not waive sentencing claims is further evidenced by Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024), which states,

> "No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment.

> No appeal shall be taken upon a negotiated plea of guilty challenging the sentence as excessive unless the defendant, within 30 days of the imposition of sentence, files a motion to withdraw the plea of guilty and vacate the judgment. For purposes of this rule, a negotiated plea of guilty is one in which the prosecution has bound itself to recommend a specific sentence, or a specific range of sentence, or where the prosecution has made concessions relating to the sentence to be imposed and not merely to the charge or charges then pending."

Rule 604(d) expressly lays out the procedure a defendant must follow to preserve a sentencing challenge following a guilty plea, and it only requires that a defendant file a motion to reconsider sentence, if only the sentence is being challenged. *Id.* With a negotiated plea, however, where both the plea and sentence are being challenged, a defendant must move to withdraw the plea of guilty and vacate the judgment. *Id.*; see *Johnson*, 2019 IL 122956, ¶¶ 31-32.

¶ 31       Here, petitioner knowingly and voluntarily entered into a blind guilty plea to one count of first degree murder, and in exchange the State dismissed the other charges with no agreement as to the sentence. The circuit court admonished petitioner that, if he pleaded guilty, the sentencing range was between 20 to 60 years in prison. Thus, it was up to the court to review the evidence and arguments presented at the sentencing hearing and determine petitioner's sentence. The court ultimately sentenced him to 40 years in prison. Further, the court readmonished

- 10 -

petitioner that he could challenge his sentence, and petitioner subsequently filed a timely motion to reconsider his sentence where he claimed that his sentence was excessive in view of his background and the nature of his participation in the offense. Ultimately, the court denied his motion.

¶ 32   Accordingly, we find, because petitioner's blind plea contained no agreement or concession as to his sentence, petitioner did not waive any constitutional challenge to his sentence. Thus, having found that his blind guilty plea did not waive his sentencing challenge, we are left with determining the proper relief.

¶ 33   Petitioner argues that, because this court accepted the State's concession, the proper remedy is to vacate the appellate court's decision and remand the case to the appellate court for it to consider his as-applied proportionate penalties challenge to his 40-year sentence. The State argues remand is not necessary because the circuit court properly denied the section 2-1401 petition where it is not the proper vehicle for a proportionate penalties claim. In the alternative, the State argues petitioner's as-applied proportionate penalties claim is meritless and he cannot show diligence and thus this court may affirm the appellate court's judgment on this alternative basis.

¶ 34   We initially acknowledge that the State raises a procedural argument that petitioner's section 2-1401 petition is not the proper vehicle for his proportionate penalties claim. The State however failed to file a response to the section 2-1401 petition, and it raises this procedural issue for the first time in this court. Thus, the State forfeited its procedural argument, and we decline to address it. See *People v. Pinkonsly*, 207 Ill. 2d 555, 564 (2003) (concluding the State waived its timeliness argument and declining to address it, stating, "[i]f the State wished to argue that the defendant's section 2-1401 petition was untimely, it should have done so before the trial court, where any amendments could have been made and any factual disputes could have been resolved"); *People v. Lucas*, 231 Ill. 2d 169, 175 (2008) (stating the doctrine of forfeiture applies to the State as well as to the defendant).

¶ 35   Instead, in the interest of judicial economy, we choose to review the substance of petitioner's section 2-1401 petition to determine whether his as-applied proportionate penalties challenge to his 40-year sentence is meritorious. See *People v. Lighthart*, 2023 IL 128398, ¶ 72 (declining to remand in the interest of judicial economy); *Jones v. Pneumo Abex LLC*, 2019 IL 123895, ¶ 32 (declining to remand

where "[i]t merely wastes judicial resources and needlessly prolongs the ultimate disposition of this litigation").

¶ 36 "To obtain relief under section 2-1401, the defendant 'must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief.' " *Pinkonsly*, 207 Ill. 2d at 565 (quoting *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986)). "That is, in order to obtain relief under section 2-1401, the defendant must show both a meritorious defense to the charges against him and due diligence in presenting it." *Id.* Where, like here, the State failed to file a responsive pleading to petitioner's section 2-1401 petition for postjudgment relief, all well-pleaded facts are taken as true. See *People v. Vincent*, 226 Ill. 2d 1, 8-9 (2007).

¶ 37 Petitioner argues his section 2-1401 petition states a meritorious as-applied proportionate penalties claim, where his 40-year sentence was constitutionally disproportionate based on his sentencing hearing and developments in brain science in young adults. Petitioner admits that his 40-year sentence is not a *de facto* life sentence nor was it mandatory. See *People v. Hilliard*, 2023 IL 128186, ¶¶ 23-29. However, petitioner contends that this court expressly noted in *Hilliard* that defendants like him are not precluded from raising proportionate penalties claims. *Id.* ¶ 29 (finding insofar as the appellate court's decision can be read as holding that an adult defendant cannot bring an as-applied challenge under the proportionate penalties clause to a sentence other than life, it does not accurately reflect the law; the Illinois Constitution does not limit a proportionate penalties challenge to just juveniles or individuals with life sentences).

¶ 38 Petitioner further alleges that the circuit court failed to consider any of his rehabilitative potential, in addition to claims based on his age at the time of the offense. Petitioner alleges that the court indicated it was predisposed to impose a 40-year sentence before it heard any mitigating evidence and the record includes several facts that support his rehabilitative potential, including his minimal criminal history, family background and support, and his lack of gang involvement or substance abuse.

¶ 39    The State argues that the circuit court properly denied petitioner's section 2-1401 petition because his claim that his 40-year sentence violates the proportionate penalties clause is meritless. The State contends petitioner's sentence comports with the proportionate penalties clause where the facts and circumstances of the case show that the 40-year sentence is not " 'so wholly disproportionate to the offense as to shock the moral sense of the community.' " *People v. Clark*, 2023 IL 127273, ¶ 51 (quoting *People v. Miller*, 202 Ill. 2d 328, 338 (2002) (*Leon Miller*)). The State further argues, to the extent petitioner alleges that the circuit court failed to consider his age and other mitigating factors at sentencing, the record shows the court expressly considered all factors and evidence, which included his age and related circumstances. We agree with the State.

¶ 40    "The proportionate penalties clause of the Illinois Constitution requires that all penalties 'be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.' " *Id.* (quoting Ill. Const. 1970, art. I, § 11). "This court has observed that there is no indication that the possibility of rehabilitating an offender was to be given greater weight and consideration than the seriousness of the offense in determining a proper penalty." *People v. Taylor*, 102 Ill. 2d 201, 206 (1984). "A defendant's sentence violates the proportionate penalties clause where, among other circumstances, the penalty imposed is 'cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community.' " *Clark*, 2023 IL 127273, ¶ 51 (quoting *Leon Miller*, 202 Ill. 2d at 338).

¶ 41    While petitioner can raise an as-applied proportionate penalties claim under *Hilliard*, he ultimately cannot succeed on his claim where his 40-year sentence was not a *de facto* life sentence under *People v. Buffer*, 2019 IL 122327, ¶ 40, and it was not "wholly disproportionate to the offense as to shock the moral sense of the community."

¶ 42    This court in *Hilliard* recently upheld a 40-year sentence for an 18-year-old convicted of attempted murder where the defendant "chose to fire multiple shots at [the victim] at close range with no demonstrated provocation in an attempt to kill him." 2023 IL 128186, ¶ 40. The court took into consideration as true the allegations that, "when defendant committed the offense, his brain was not yet fully developed because he was 18 years old and that he had rehabilitative potential as

- 13 -

demonstrated by the absence of a criminal history, lack of gang involvement, and a supportive family." *Id.* However, the court determined the imposition of a mandatory 25-year firearm enhancement, which brought his total sentence to 40 years, was not even arguably " 'cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community.' " *Id.* (quoting *Leon Miller*, 202 Ill. 2d at 338). Ultimately, the court determined that the defendant's sentence, as applied to him, did not violate the proportionate penalties clause. *Id.* ¶ 1.

¶ 43    Like the defendant in *Hilliard*, petitioner's 40-year sentence is proportionate to his offense. Petitioner was not a juvenile when he committed the offense, as he was 20 years old. Further, the factual basis provided by the State at the plea hearing shows that petitioner fatally shot an unarmed victim at close range when he would not comply with petitioner's demand to tell him where Kelly was located.

¶ 44    Moreover, the record shows that at the sentencing hearing the circuit court took into consideration petitioner's rehabilitative potential where it considered the PSI (which included petitioner's age, family, educational, minimal criminal, and employment history), the statutory factors in mitigation, the testimony of petitioner's grandmother, and petitioner's statement in allocution. While the court found no factors in mitigation applied, it had discretion to sentence petitioner to 60 years in prison but ultimately found a 40-year sentence was fair.

¶ 45    Accordingly, we find when considering the serious offense in this case, and petitioner's rehabilitative potential, that petitioner fails to state a meritorious claim that his 40-year sentence violates the proportionate penalties clause. Thus, because petitioner failed to allege a meritorious claim, we need not address whether he established due diligence. See *Pinkonsly*, 207 Ill. 2d at 565. Ultimately, we find the circuit court did not err in dismissing petitioner's section 2-1401 petition.

¶ 46                                    III. CONCLUSION

¶ 47    For the foregoing reasons, we affirm the judgment of the appellate court on other grounds and affirm the judgment of the circuit court.

¶ 48      Judgments affirmed.


¶ 49      JUSTICE ROCHFORD took no part in the consideration or decision of this case.